CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CALLIE GLANTON STEELE (Bar No. 155442)
Senior Litigator
(E Mail: Callie_Steele@fd.org)
NEHA A. CHRISTERNA (Bar No. 245191)
Deputy Federal Public Defender
(E-Mail: Neha_Christerna@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MEI XING

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DISTRICT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MEI XING,<br><br>Defendant. | Case No. CR 20-228-ODW<br><br>**MEI XING'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* NUMBER ONE TO EXCLUDE EVIDENCE OF COMPLAINING WITNESSES' PRIOR AND POST-OFFENSE SEXUAL BEHAVIOR**<br><br>Hearing Date: May 6, 2022<br>Hearing Time: 10:00 a.m. |

Defendant Mei Xing through her counsel of record, Senior Litigator Callie Glanton Steele and Deputy Federal Public Defender Neha A. Christerna, hereby opposes the Government's Motion *In Limine* Number One to Exclude Evidence of the Complaining Witnesses' Prior and Post-Offense Sexual Behavior.

///

///

///

This opposition is based upon the attached Memorandum of Points and Authorities, Sixth Amendment to the United States Constitution, Rules 403 and 404 of the Federal Rules of Evidence, all files and records in this case, and any further evidence as may be adduced at the hearing on this motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 29, 2022      By  */s/ Callie Glanton Steele*
CALLIE GLANTON STEELE
Senior Litigator
NEHA A. CHRISTERNA
Deputy Federal Public Defender

2

# MEMORUNDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Mei Xing is currently charged in a First Superseding Indictment with sex trafficking, in violation of 18 U.S.C. §§1591(a)(1), (a)(2), and (b)(1). In addition, the government has filed forfeiture charges [18 U.S.C. § 1954(d) and 28 U.S.C. § 2461]. [Docket No. 51]. Trial is scheduled for Tuesday, May 17, 2022.

On April 19, 2022, the government lodged Motion *In Limine* Number One to Exclude Evidence of the Complaining Witnesses'[1] Prior and Post-Offense Sexual Behavior ("Motion to Exclude Sex Work"). With this opposition, Ms. Xing opposes the government's motion as the sex work of the complaining witness is highly probative of 1) the witnesses intent to engage in sex work in this case, 2) their consent to engage in sexual acts with their customers, 3) their motives for claiming that Ms. Xing forced them to engage in sex work even though many of them engaged in it before they met her and after she was arrested, 4) and their bias. As argued in further detail below, the government's motion should be denied.

## II. ARGUMENT

### A. Prior and subsequent sex work for each complaining witness is admissible.

In its motion, the government addresses complaining witnesses 2, 3, 4, 5, and 6, and argues that sex acts prior to and after they worked with Ms.

---

[1] The government refers to the complaining witnesses as "victims". However, Ms. Xing has filed a Motion *in Limine* Precluding the Use of the Word "Victim" [Docket No. 492] and will refer to the witnesses as "complaining witnesses".

3

Xing should be excluded. Ms. Xing seeks to introduce evidence of prior and subsequent acts of commercial sex work as to each of the witnesses listed in the government's motion.[2]

Assuming without conceding that the allegations at issue here involve alleged sexual misconduct within the meaning of Fed. R. Evid. 412, evidence of prior and subsequent-to-indictment voluntary commercial sex work by the government's witnesses has significant probative value to show that the alleged victims have - a motive for fabricating allegations that they were forced, threatened or tricked into engaging in commercial sex. Moreover, evidence of motive to fabricate has significant probative value for impeachment purposes, and there is a strong argument for admissibility under Rule 412(b)(1)(C).

First, as to complaining witness no. 2, the government alleges that she has no criminal history and she claims that there is no evidence of sex work prior to or after her alleged sex work in this case.[3] However, Ms. Xing will seek to introduce any evidence of prior or subsequent sex work and that evidence should be admitted. According to the government, complaining witness no. 2 is a lawful permanent resident but did not have a license to give massages. Thus, under 404(b)(2), any evidence that she engaged in sex work before and after this case is admissible to show knowledge – that she knew that she would be engaging in sex work when hired without a license to give massages. It is also admissible to show that she has a motive to misrepresent that Ms. Xing forced her to engage in sex work, because she is

---

[2] Ms. Xing will file a formal motion pursuant to Rule 412.

[3] Motion to Exclude Sex Work at 2.

4

a lawful permanent resident, not a naturalized citizen, and if she claims to be a victim of sex trafficking, she may apply for a T-visa and remain in the country.

As to complaining witness no. 3, before working for Ms. Xing, she had two arrests for prostitution on February 23, 2016, and March 9, 2016.[4] The government alleges that when she began working for Ms. Xing in 2016, she was aware that those giving massages were engaging in sex work, but, the government claims, she "believed that any sex work would be on her own terms".[5] Thus, the government concedes that she knew that sex work was an aspect of employment but stops short by saying that she thought that it would be on her own terms. Evidence of prior and subsequent sex work by witness no. 3 is relevant to her credibility because she claims that she was forced to perform sex work for clients, yet she performed sex work before and after the relevant time period. In addition, prior and subsequent sex work is highly relevant to her consent to engage in the sex work in this case. The evidence is also relevant to her credibility and bias.

Complaining witness no. 3 said that Ms. Xing threatened to report her to immigration authorities. However, since she already had two arrests for prostitution, those arrests themselves had the ability to affect her attempt to adjust her status. *See* 8 U.S.C. § 1182(a)(2)(D) (indicating that someone is admissible if they have "engaged in prostitution" within the last 10 years, however, that inadmissibility can be waived).

The evidence of prior and post-offense sex work is also admissible to show that the witness has a motive to misrepresent that Ms. Xing forced

---

[4] *Id.* at 3.

[5] *Id.* at 2.

5

her to engage in sex work, because she is in the country illegally and she has a pending application for a t-visa, as she claims that she is a victim of sex trafficking. In addition, to the extent that she makes inconsistent statements as to her prior activity, the defense must be able to impeach her with prior inconsistent statements.

As to complaining witness no. 4, the government argues that on the second day of work, a customer told her that he had paid "the boss" already. This statement is hearsay and is not admissible. Federal Rules of Evidence 801-804. The witness claims that she was also told that "nobody says no to" Ms. Xing and that they have all been through it. Once again, those statements are inadmissible hearsay. The witness claims that she was raped but never reported it. Ms. Xing objects to the admission of this information under Rule 403. Any alleged rape is substantially more prejudicial than probative and should be excluded under Rule 403. In addition, if the government seeks to admit it, they government failed to provide proper notice under Rule 404(b).

Complaining witness no. 4 admitted that she was engaging in consensual commercial sex prior to even meeting Ms. Xing and had been arrested. Ms. Xing should be allowed to admit this evidence because it is probative of the witnesses' consent to engage in the conduct and refutes the witnesses claim that she was forced to engage in commercial sex due to threats by Ms. Xing. In addition, the evidence is relevant to bias because by claiming to be a victim, she is eligible and has applied for at T-visa.

Complaining witness no. 5 had been arrested before working for Ms. Xing. She claims that when she started working in 2016, she was placed in a room with a customer who claimed that he had already paid for sex. The alleged statement by the customer is hearsay, and inadmissible. She then claims that she was coerced into performing a sex act. She then continued

6

to engage in sex work due to alleged threats by Ms. Xing. She claims that she could no longer work because she had a sexually transmitted infection ("STI"). Any evidence of her contracting an STI while working for Ms. Xing is speculative and should not be admitted. Her prior and any subsequent sex work should be admitted to show that she willingly engaged in sex work. In addition, it is admissible to show bias, as she has a pending T-visa application in which she claims to be a sex trafficking victim.

Complaining witness no. 6 claims that she had no history of prostitution. She thought that she was being hired to give massages, even though she had no license. In addition, since she was not in the country legally she could not work legally. After working for a few days, she had a police officer that was a customer and she did not feel that she could refuse the sex acts that he requested. She claims that she continued working because of threats, but eventually fled to Arizona. In 2019, she was a witness at the same massage parlor, claiming that she was merely "dropping something off for a friend".[6]

The sex work before and after the time alleged in the indictment is admissible as it is relevant to prove that witness no. 6 consented to sex work, and had knowledge that sex work would be performed at the massage parlor. Rule 404(b)(2). It is also admissible to show that she is biased, as she has filed a T-visa application and claims to be a victim of sex trafficking.

///
///
///

---

[6] *Id.* at 6.

7

### B. Rule 412 does not bar introduction of the complaining witnesses' prior and post indictment acts, arrests, and convictions because the instant alleged offenses are not "involving alleged sexual misconduct" within the meaning of Rule 412.

Rule 412 does not preclude introduction of the complaining witnesses' prior acts, arrests and convictions as there is no allegation that Ms. Xing used sexual misconduct to threaten or coerce the government's witnesses.

According to Rule 412(a) of the Federal Rules of Evidence the following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:

> (1) evidence offered to prove that a victim engaged in other sexual behavior; or
> (2) evidence offered to prove a victim's sexual predisposition.

Fed. R. Evid. 412.

Rule 412 is not implicated where the criminal proceeding does not involve "sexual misconduct." As a threshold matter, the issue is whether the instant charge under Section 1591 even involves "alleged sexual misconduct" within the meaning of Rule 412. Contrary to the government's contentions, Rule 412 is not implicated here.

The government cites *United States v. Haines*, 918 F.3d 694, 697 (9th Cir. 2019)[7], for the general proposition that "a sex-trafficking victim's other prostitution activities is inadmissible under Rule 412." [8] A less cursory review of *Haines* reveals that *Haines* does not stand for such a broad proposition. While *Haines* observed that *United States v. Elbert*, 561 F.3d 771, 776 (8th Cir. 2009), applied Rule 412 in a §1591 prosecution, a less cursory review of *Haines* reveals that neither *Haines* nor *Elbert* announced a blanket rule that Rule 412 applies to all § 1591 prosecutions. In *Elbert,* the issue was whether the defendant had the constitutional right to introduce evidence of the alleged child victims' prior acts of prostitution where the defendant insisted that he did not cause the children to engage in the commercial sex acts. *Id.* at 777. The court in *Elbert* rejected appellant's contention that evidence of the child victims' prior acts of prostitution demonstrated that defendant did not cause them to engage in commercial sex acts in that case "[b]ecause the victims were minors and could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims." *Elbert,* 561 F.3d at 777. In other words, all that mattered in defendant Elbert's case was that he "knowingly recruited, enticed, harbored, transported, provided, or obtained a minor, knowing the minor would be caused to engage in commercial sex acts" in violation of 18 U.S.C. §1591(a).

---

[7] Motion to Exclude Sex Work at 6.

[8] *Id.* at 13.

9

The instant case involves alleged adult victims. Thus, the government must prove beyond a reasonable doubt the elements of fraud, force, or coercion to convict Ms. Xing. The prior and subsequent acts by the government's witnesses are highly probative here because they tend to show that the witnesses were not bamboozled, forced or coerced.

While the commentary to the 1994 amendments to Fed. R. Evid. 412 states that "involving sexual misconduct" means that the rule applies "in all cases in which there is evidence that someone was the victim of sexual misconduct, without regard to whether the alleged victim or person accused is a party to the litigation," Fed.R.Evid. 412, Advisory Committee Note, 1994 Amendments, the rule does not operate to bar evidence that is offered against a person who cannot reasonably be characterized as a "victim of alleged sexual misconduct." Here there is no allegation that Mei Xing used sexual misconduct to threaten or coerce the government's witnesses.

Moreover, Mei Xing is not seeking to introduce evidence about the government witnesses' prior sex work to invade their privacy, embarrass them or engage in sexual stereotyping associated with intimate sexual details. See e.g. Fed.R.Evid. 412 Advisory Committee Notes (explaining that of the *purposes* of Rule 412 is "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details."). The evidence of any past or post commercial sex work by the government's witnesses is relevant to their credibility with respect to allegations that they did not know working as unlicensed massage workers involved commercial sex even though they had previously worked as commercial sex

10

workers in a massage facility, or that Mei Xing forced them to engage in commercial sex.

### C. Excluding evidence of the complainant's commercial sex work will abridge Mei Xing's constitutional rights.

The prior acts of the government's witnesses are relevant to establish intent, knowledge, or absence of mistake. The witnesses' prior commercial sex work and arrests for prior commercial sex work in a massage parlor tends to show that they knew they would be engaging in commercial sex when they applied to work as unlicensed massage therapists where the defendant is alleged to have forced or threatened the witnesses to engage in commercial sex work. Moreover, the prior acts are relevant to rebut any clam of innocent motive for responding to an ad for massage therapists. Indeed, it shows intent, knowledge, motive, opportunity, and absence of mistake or accident in applying and then taking a position as an unlicensed massage therapist for weeks and months on end. "When the evidentiary hypothesis is intent, the Ninth Circuit requires substantial similarity between the bad acts evidence and the crime charged. *United States v. Arambula–Ruiz*, 987 F.2d 599, 602 (9th Cir.1993)) ("similarity is always required to prove identity of intent, since, 'if the prior act is not similar, it does not tell the jury anything about what the defendant intended to do in his later action,'" )(quoting *United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir.1989)); see also *United States v. Garcia*, 730 F. Supp. 2d 1159, 1172 (C.D. Cal. 2010)( The degree of similarity weighs in favor of admission in the Ninth Circuit.) The similarity of the witnesses' conduct in relation to prior acts is substantially similar to their conduct in the crime

11

charged. The degree of similarity weighs in favor of admission in the Ninth Circuit. *See e.g., United States v. Garcia*, 730 F. Supp. 2d 1159, 1172 (C.D. Cal. 2010).

### III. CONCLUSION

The prior and subsequent sex work of the government's witnesses is highly probative of the witnesses' intent to engage in sex work in this case, their consent to engage in sexual acts with their customers, their motives for claiming that Ms. Xing forced them to engage in sex work even though many of them engaged in it before they met her and after she was arrested, and their bias. Thus, the government's Motion to Exclude Sex Work should be denied.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 25, 2022      By  */s/ Callie Glanton Steele*
CALLIE GLANTON STEELE
Senior Litigator
NEHA A. CHRISTERNA
Deputy Federal Public Defender

12