TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DAMARIS DIAZ (Cal. Bar No. 277524)
SCOTT M. LARA (Cal. Bar No. 296944)
Assistant United States Attorney
Violent & Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0302/0427
     Facsimile: (213) 894-3713
     E-mail:   damaris.diaz@usdoj.gov
               scott.lara@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:20-CR-0228(A)-ODW |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NUMBER 4 TO EXCLUDE VICTIMS' HISTORICAL IMMIGRATION RECORDS |
| v. | |
| MEI XING, | Hearing Date: May 6, 2022 |
| Defendant. | Location: Courtroom of the Honorable Otis D. Wright II |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Damaris Diaz and Scott M. Lara, hereby submits Government's Reply in Support of its Motion in Limine Number 4 to Exclude Victims' Historical Immigration Records.

///

///

The government's reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 2, 2022                          Respectfully submitted,

                                          TRACY L. WILKISON
                                          United States Attorney

                                          SCOTT M. GARRINGER
                                          Assistant United States Attorney
                                          Chief, Criminal Division

                                                      /s/
                                          SCOTT M. LARA
                                          DAMARIS DIAZ
                                          Assistant United States Attorneys

                                          Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On September 29, 2020, defendant was charged by the First Superseding Indictment with Sex Trafficking by Force, Fraud, or Coercion of five different victims, referenced in the First Superseding Indictment as Victims 2, 3, 4, 5, and 6 (the "Victims").

On April 18, 2022, the government filed its Motion in Limine to exclude the historical immigration records of Victims 2, 4, 5 and 6 (the "Historical Immigration Records"), which was entered by the Court under seal on April 19, 2022. (Dkt. 107, the "Motion" or the "Mot."). Defendant filed her opposition on April 29. (Dkt. 145, "Opposition" or "Opp.").

In support of its Motion, the government demonstrated that the Historical Immigration Records were irrelevant, unduly prejudicial, and would be improper 404(b) evidence. In its Opposition, defense supported the government's argument by putting forth an impermissible 403 and 404(b) argument to argue for the introduction of these records. These records must be excluded.

As stated in the initial motion, this motion only applies to *Historical* Immigration Records that were filed *before* defendant ever trafficked the Victims, and not to the T-Visa applications, filed after defendant trafficked the Victims.

**II.  ARGUMENT**

   **A.   The Court has the Discretion to Exclude the Historical Immigration Records**

The right to cross examination "may, in appropriate cases, bow to accommodate other legitimate interest in the criminal trial process." Rock v. Arkansas, 483 U.S. 44, 55 (1987); see also,

Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam) ("the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (emphasis in original); Michigan v. Lucas, 500 U.S. 145, 149 (1991) (The confrontation clause right to "present relevant testimony is not without limitation.").

"'[T]rial judges retain wide latitude' to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues the witness' safety, or interrogation that is repetitive or only marginally relevant.'" Lucas at 149 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). The Court retains wide discretion to exclude evidence or questioning that create undue prejudice or would confuse the issues. See e.g., Lucas at 150; Fenenbock v. Dir. of Corr. for California, 692 F.3d 910, 921 (9th Cir. 2012).

### B. The Historical Immigration Records

There is no reason statements from *before the Victims were trafficked* shed any light on whether Victims were trafficked. Defendant's only argument to the contrary is that these applications are "information that would motivate the [Victims] to favor the prosecution, who is sponsoring their T-Visa applications[1] . . . ." Opp. at 2. Defendant also argues that past granted/pending applications could lead a jury to "infer a motive to lie so that the witnesses could avoid deportation and prosecution for violating the

---

[1] The Motion does not apply to T-Visa applications.

2

immigration laws of the United States." (Opp. at 3.) These claims are unpersuasive, and fall apart upon examination. For example, Victim 2 was granted Lawful Permanent Resident ("LPR") status before she came to the United States, and before she ever met defendant. Victim 2 never applied for a T-Visa, and had no need to curry favor with law enforcement for immigration status. Victim 2's previously granted LPR application in 2015 provides no motive to lie about her victimization two years later.

Victims 4, 5, and 6 filed immigration applications before being trafficked by defendant. Victims 4, 5, and 6's immigration applications were (and still are) pending when the Victims reported defendant's trafficking. According to immigration law applicable at all relevant times, while these applications are pending these Victims are legally permitted to remain in the United States. Thus, these Victims were not at risk for "deportation" or "prosecution for violating the immigration laws" when they reported defendant, because they were legally present.

The Historical Immigration Records establish no motive for the Victims to fabricate claims against defendant.

**C.    Defendant Can Still Question the Victims' Bias Without the Historical Immigration Documents**

Even without the Historical Immigration Records, defendant can still question about the Victims' bias related to the immigration benefits received from being trafficking victims. Defendant may argue that certain Victims received T-Visa applicant benefits for being victims of defendant's sex trafficking. The government is not seeking to exclude that line of inquiry here.

Moreover, there is no reason why defendant needs to the

3

statements <u>within</u> the Historical Immigration Records.[2]  Defendant is unable to demonstrate why evidence of bias would include: a Victims' hardships in a foreign country, and other personal information.[3]  The only reason to delve into past trauma articulated in the Historical Immigration Records is to embarrass the Victims, threaten the Victim's pending immigration applications, and prejudice the jury against the Victims.

### D. **Defendant Seeks to Use the Historical Immigration Records for an Improper Purpose**

Defendant's Opposition admits that she intends to use these records for an improper purpose.  Critically, defendant says these records are a "motivation to lie" so the victims "could avoid deportation and prosecution for **violating the immigration laws** of the United States."  (Opp at 2-3.)  Defendant is admitting that she intends to argue that these Historical Immigration Records are evidence of "violat[ions] [of] the immigration laws," to discredit the Victims' testimony here.

The Victims are not being prosecuted or threatened with deportation as a result of the pending Historical Immigration Records.  Nor is Victim 2 under any investigation as a result of her successful LPR application.  **Defendant** instead intends to **claim** that the Victims **should be** prosecuted/threatened with deportation related

---

[2] Defendant is asking to introduce <u>both</u> the fact that the Historical Immigration Records exist <u>and</u> the statements within.  This is doubly prejudicial.

[3] The Historical Immigration Records also contain statements regarding the Victims' criminal histories which the government separately produced.  There is no reason why the criminal history statements in 2015/2016 Historical Immigration Records would be more useful to defendant at trial than 2022 criminal history printouts and police reports.

4

to the contents of the Historical Immigration Records (presumably by insinuating without evidence that they made misstatements on these documents). This invention helps defendant fabricate an alternate reason that these Victims needed T-Visas. This is unsupported by the record and unduly prejudicial.

The Court may exclude evidence if its probative value is substantially outweighed by a danger of unfair prejudice or confusing the issues. Fed. R. Evid. 403. The Ninth Circuit has found that the district court did not abuse its discretion when it excluded a defendant's pending asylum application and status as its disclosure could lead to unfair prejudice. See United States v. Kvashuk, 29 F.4th 1077, 1090-91 (9th Cir. 2022).

To some extent, evidence about the Victims' immigration status and T-Visa applications is unavoidable, as discussed above and because defendant coerced Victims with threats of reporting prostitution to immigration authorities. However, to allow defendant to question Victims line by line regarding statements in their Historical Immigration Records to imply that they are liars would create undue prejudice and confuse the issues. Moreover, to allow defendant to insinuate, without evidence, that claims made about a Victim's traumatic experience in their home country is somehow fabricated has no probative value here, is unduly prejudicial confuses the issues, and would re-traumatize the Victims.

Likewise, under Rule 404(b) defendant may not attempt to use evidence of another bad act to prove a person's character in order to show that on a particular occasion they acted in accordance with that character. Here that is precisely what defendant attempts to do. Defendant will argue that Victims allegedly "viol[ated] the

5

immigration laws" as evidenced by their Historical Immigration Records by lying about their past trauma, therefore they must have lied about their victimization here. This is improper character evidence.

Moreover, to make this argument defendant would need to rely on extrinsic evidence (i.e. the Historical Immigration Records) for alleged specific instances of misconduct (alleged misstatements therein). This is disallowed by the plain letter of Rule 608(b) which states, "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to _attack_ or support the witness's _character for truthfulness_." Fed. R. Evid. 609(b)(emphasis added). Defendant cannot use an extrinsic piece of evidence to confront Victims regarding irrelevant historical immigration statements.

Defendant also fails to demonstrate **how** the Historical Immigration Records show that the Victims were at risk for deportation or prosecution for immigration violations. It appears defendant simply seeks to confront the Victims with these records and insinuate that their past trauma is fabricated. Then argue at closing the Victims lied on Historical Immigration Records to fraudulently obtain status in the United States, so they must have fabricated defendant's treatment of them now for the same purpose. This is improper, and is barred by Rules 403, 404(b) or 608.

### III. CONCLUSION

For all of the reasons listed above and in the government's Motion and this Reply, evidence and questioning related to the Historical Immigration Records and all statements made within should be excluded.