CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CALLIE GLANTON STEELE (Bar No. 155442)
Senior Litigator
(E Mail: Callie_Steele@fd.org)
NEHA A. CHRISTERNA (Bar No. 245191)
Deputy Federal Public Defender
(E-Mail: Neha_Christerna@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MEI XING

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MEI XING, <br><br> Defendant. | Case No. CR 20-228-ODW <br><br> **MEI XING'S RULE 412 MOTION TO INCLUDE EVIDENCE OF THE GOVERNMENT'S WITNESSES' SEX WORK BEFORE AND AFTER THE CONDUCT ALLEGED IN THE INDICTMENT** <br><br> Date: May 17, 2022 <br> Time: 9:00 a.m. |

Defendant Mei Xing through her counsel of record, Senior Litigator Callie Glanton Steele and Deputy Federal Public Defender Neha A. Christerna, hereby moves to include evidence of the government's witnesses' sex work that occurred before and after the conduct alleged in the indictment.

///

///

///

///

This motion is based upon the attached Memorandum of Points and Authorities, Sixth Amendment to the United States Constitution, Rules 404(b) and 412 of the Federal Rules of Evidence, all files and records in this case, and any further evidence as may be adduced at the hearing on this motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: May 3, 2022          By  */s/ Callie Glanton Steele*
CALLIE GLANTON STEELE
Senior Litigator
NEHA A. CHRISTERNA
Deputy Federal Public Defender

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Mei Xing is charged in a First Superseding Indictment with sex trafficking, in violation of 18 U.S.C. §§1591(a)(1), (a)(2), and (b)(1). In addition, the government has filed forfeiture charges [18 U.S.C. § 1954(d) and 28 U.S.C. § 2461]. [Docket No. 51]. Trial is scheduled for Tuesday, May 17, 2022.

According to the discovery, the witnesses will testify that they were hired to work at a massage parlor, even though they did not have massage licenses. Each will claim that she did not know that sexual services were offered at the establishment. Each will claim that Ms. Xing forced or coerced her into providing sexual services to customers, even though each of the witnesses had worked as prostitutes before the conduct alleged in the indictment. Additionally, after allegedly working for Ms. Xing, each of them again worked as prostitutes.

## II. ARGUMENT

### A. Evidence to be offered.

At trial, Ms. Xing intends to offer evidence that before Witness 2[1] arrived in the United States on or about November 22, 2015, she worked as a prostitute at nightclubs in Guang Dong, China.[2] She then came to the

---

[1] The government refers to the witnesses as "victim 2, victim 3, etc." Ms. Xing has filed a motion *in limine* to preclude the government from referring to the complaining witnesses as "victims". Therefore, in this motion, they will be referred to as Witness 2, Witness 3, etc.

[2] In 2014, it was reported that 4 million to 6 million women worked as sex workers in Guang Dong, China. *The Guardian*, Jonathan Kaiman, Feb. 11, 2014,

United States and worked as a prostitute in massage parlors, including in one in Thousand Oaks, California. She provided sex services to customers at a house located at 8819 1/2 Garvey Avenue in Rosemead, California in 2017. She states that she worked for Ms. Xing from approximately November of 2017 to April of 2018. While she worked for Ms. Xing she used her cellphone to communicate with customers. After she stopped working for Ms. Xing, she continued to see her customers and provided sexual services to private clients. She met clients in various places including at houses, hotels and motels. In July of 2018, she worked for P. L. H. at a massage parlor and continued to work as a prostitute in 2018 and 2019.

At trial, Ms. Xing also intends to offer evidence that before Witness 3 arrived in the United States on or about March of 2015, she worked as a prostitute in nightclubs in Guang Dong, China. She then came to the United States and worked as a prostitute in massage parlors. She also had private clients that she met with in homes, motels, and hotels. Prior to meeting Ms. Xing, Witness 3 had two arrests for prostitution, which occurred on February 23, 2016, and on March 9, 2016. She had sex with customers at 8819 1/2 Garvey Avenue in Rosemead, California. Witness 3 states that she worked for Ms. Xing from approximately 2016 to October 23, 2018. After Ms. Xing's arrest on October 23, 2018, Witness 3 worked with P.L.H. and provided sexual services. Witness 3 then became a partner in the sex business with P.L.H. and continued to the provide sexual services to her customers. She continues working as a prostitute at a massage parlor.

At trial, Ms. Xing will offer evidence that Witness 4 worked as a

---

https://www.theguardian.com/world/2014/feb/11/china-province-prostitution-crack-down-guangdong-sex-workers. (Last visited May 3, 2022).

prostitute prior to meeting Ms. Xing and was arrested for soliciting prostitution, in violation of California Penal Code 647(b), on or about May 5, 2016. She also worked for a massage parlor as a prostitute in or near Tracy, California. Witness 4 also worked for another massage business for someone named Judy. She indicated that she worked for Ms. Xing from December of 2016 to January of 2017. In 2017, she worked as a prostitute for another massage business called Garvey Therapy. She also saw clients at houses, motels, and hotels. She continued to work as a prostitute.

Ms. Xing also intends to offer evidence that Witness 5 worked as a prostitute prior to meeting Ms. Xing. She was arrested for prostitution months before meeting Ms. Xing. She claims to have worked for Ms. Xing from July of 2016 to May of 2017. She worked for another massage parlor as a prostitute in 2017. In 2018 she worked as a prostitute for Garvey Therapy. She continued to work as a prostitute and was arrested on September 9, 2021, for conduct related to prostitution at Swan Massage, located at 9845 Garvey Avenue in El Monte, California.

Before Witness 6 arrived in the United States on or about March 11, 2015, she had worked as a prostitute at nightclubs in Guang Dong, China. She then came to the United States and worked as a prostitute in massage parlors. She also had private clients that she met with in homes, motels, and hotels. She had sex with customers at 8819 1/2 Garvey Avenue in Rosemead, California. Witness 6 stated that she worked for Ms. Xing from approximately January of 2017 to October of 2018. When Ms. Xing was arrested on October 23, 2018, Witness 6 continued to work at Garvey Therapy as a prostitute. She continued working as a prostitute with private clients and in massage parlors for P.L.H. including in December of 2019.

///

5

### B. The purpose for offering evidence of the witnesses' sex work is to show bias and the witnesses' motives to fabricate their claims; excluding the evidence would violate the Confrontation Clause.

"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Davis v. Alaska,* 415 U.S. 308, 315 (1974). The Confrontation Clause requires more than just confronting the witness physically, it means that the accused must have the opportunity to cross-examine the witness. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965).

Indeed, the primary purpose of the right to confrontation is to allow cross-examination of the witness. *Davis*, 415 U.S. at 315-16. Thus an essential part of the right is to provide an opportunity for the accused to show that the prosecution's witnesses are biased. *United States v. Abel,* 469 U.S. 45, 50 (1984). According to the Ninth Circuit, an accused individual's Sixth Amendment right to cross-examine his or her accusers is implicated when the jury may reasonably have had an issue with the witnesses' credibility. *See Fowler v. Sacramento Cnty. Sheriff's Dep't,* 421 F.3d 1027, 1036 (9th Cir. 2005) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

Here, the witnesses claim that Ms. Xing forced them to engage in commercial sex. Each of the witnesses had engaged in commercial sex before meeting Ms. Xing. Many actually have arrests for prostitution. Even so, some will claim that that they had no idea that the massage parlor offered sex services, even though they were hired to give massages without massage licenses. In addition, they had worked as prostitutes in massage parlors and with private client prior to their employment with Ms. Xing. It

is crucial for the jury to learn that they were not naïve about the business, but rather had participated in the same business previously. Moreover, after each witness finished working with Ms. Xing, they all continued to work as prostitutes. To conceal this evidence from the jury would deny Ms. Xing her right to fully confront the witnesses against her, even though it is her constitutional right.

The Ninth Circuit has reiterated what has been well-established by the Supreme Court -- the accused has a constitutional right to explore the witnesses' biases and self-interest, including by presenting extrinsic evidence. See, e.g., *United States v. Noti,* 731 F.2d 610, 613 (9th Cir. 1984); *Burr v. Sullivan*, 618 F.2d 583, 586 (9th Cir. 1980). When presenting evidence that a witness is biased or is testifying due to his or her self-interest, the party cross-examining the witness is not required to accept the answer of the witness, but may offer extrinsic evidence as rebuttal evidence. *United States v. James,* 609 F.2d 36, 46 (2d Cir.1979), *cert. denied,* 445 U.S. 905 (1980). If the proffered evidence is excluded, Ms. Xing's constitutional rights will be violated as she will be precluded from exposing the witnesses' motives to lie and their biases.

Moreover, Ms. Xing should be allowed to cross-examine the witnesses not only to expose their biases, but to demonstrate to the jury that the witnesses are exaggerating. *Pennsylvania v. Ritchie,* 480 U.S. 39, 51-52, 107 S.Ct. 989 (plurality); *see also Delaware v. Fensterer,* 474 U.S. 15, 22, (1985) (per curiam) (finding that the guarantee of the Confrontation Clause is that the accused should have an opportunity to show the jury that a witness has problems remembering, is evasive, or is confused, so that it can properly evaluate the witnesses' testimony); *Davis,* 415 U.S. at 316,

(holding that counsel for the accused is "… permitted to delve into the witness' story to test the witness' perceptions and memory, [and] … has traditionally been allowed to impeach, i.e., discredit, the witness.").

Finally, the witnesses were all involved in the illegal business of prostitution. Thus, their bias or self-interest is obvious. Accomplices who are not being charged for their offenses have a self-interest in testifying. *See Burr v. Sullivan*, 618 F.2d 583, 586–87 (9th Cir. 1980). Here, the witnesses' self-interest is increased exponentially because they also have an interest in adjusting their immigration status, and testifying as "victims" allows them to qualify for a T-Visa. All of the witnesses except for Witness 2 have T-Visa applications pending; Witness 2 is a legal permanent resident but risked her ability to adjust her status by engaging in prostitution. Thus, Ms. Xing should have a full and fair opportunity to cross-examine each witnesses regarding their bias and self-interest.

**C. Rule 412 does not bar introduction of the complaining witnesses' prior and post indictment acts, arrests, and convictions because the instant alleged offenses are not "involving alleged sexual misconduct" within the meaning of Rule 412.**

Rule 412 does not preclude introduction of the complaining witnesses' prior acts, arrests and convictions as there is no allegation that Ms. Xing used sexual misconduct to threaten or coerce the government's witnesses. According to Rule 412(a) of the Federal Rules of Evidence the following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:

>(1) evidence offered to prove that a victim engaged in other sexual behavior; or
>
>(2) evidence offered to prove a victim's sexual predisposition.

Fed. R. Evid. 412.

Rule 412 is not implicated where the criminal proceeding does not involve "sexual misconduct". As a threshold matter, the issue is whether the instant charge under Section 1591 even involves "alleged sexual misconduct" within the meaning of Rule 412. Rule 412 is not implicated here.

The instant case involves alleged adult victims. Thus, the government must prove beyond a reasonable doubt the elements of fraud, force, or coercion to convict Ms. Xing. The prior and subsequent acts by the government's witnesses are highly probative here because they tend to show that the witnesses were not bamboozled, forced or coerced.

While the commentary to the 1994 amendments to Fed. R. Evid. 412 states that "involving sexual misconduct" means that the rule applies "in all cases in which there is evidence that someone was the victim of sexual misconduct, without regard to whether the alleged victim or person accused is a party to the litigation," Fed.R.Evid. 412, Advisory Committee Note, 1994 Amendments, the rule does not operate to bar evidence that is offered against a person who cannot reasonably be characterized as a "victim of alleged sexual misconduct." Here there is no allegation that Mei Xing used sexual misconduct to threaten or coerce the government's witnesses.

Moreover, Mei Xing is not seeking to introduce evidence about the government witnesses' prior sex work to invade their privacy, embarrass them or engage in sexual stereotyping associated with intimate sexual details. See e.g. Fed.R.Evid. 412 Advisory Committee Notes (explaining that of the *purposes* of Rule 412 is "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details."). The evidence of any past or post commercial sex work by the government's witnesses is relevant to their credibility with respect 1) to allegations that they did not know working as unlicensed massage workers involved commercial sex even though they had previously worked as commercial sex workers in massage facilities, or 2) allegations that Mei Xing forced them to engage in commercial sex.

### D. The evidence is admissible pursuant to Federal Rule of Evidence 404(b).

The prior acts of the government's witnesses are relevant to establish intent, knowledge, or absence of mistake. The witnesses' prior commercial sex work and arrests for prior commercial sex work in a massage parlor tend to show that they knew they would be engaging in commercial sex when they applied to work as unlicensed massage therapists. Additionally, the prior acts are relevant to rebut any clam of innocent motive for responding to an ad for massage therapists. Indeed, it shows intent, knowledge, motive, opportunity, and absence of mistake or accident in applying and then taking a position as an unlicensed massage therapist for weeks, months, or years.

"When the evidentiary hypothesis is intent, the Ninth Circuit requires substantial similarity between the bad acts evidence and the crime charged. *United States v. Arambula–Ruiz*, 987 F.2d 599, 602 (9th Cir.1993)) ("similarity is always required to prove identity of intent, since, 'if the prior act is not similar, it does not tell the jury anything about what the defendant intended to do in his later action,'" )(quoting *United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir.1989)); see also *United States v. Garcia*, 730 F. Supp. 2d 1159, 1172 (C.D. Cal. 2010)( The degree of similarity weighs in favor of admission in the Ninth Circuit.) The similarity of the witnesses' conduct in relation to prior acts is substantially similar to their conduct in the crime charged. The degree of similarity weighs in favor of admission in the Ninth Circuit. *See e.g., United States v. Garcia*, 730 F. Supp. 2d 1159, 1172 (C.D. Cal. 2010).

### III.  CONCLUSION

The government's witnesses engaged in prostitution before and after they allegedly worked with Ms. Xing. The jury should be provided a complete picture of the conduct of the witnesses so that it may properly assess their credibility. Accordingly, Ms. Xing respectfully requests that the Court grant her motion so that she will be allowed a full and fair opportunity to cross-examine the witnesses about their conduct.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  May 3, 2022         By   */s/ Callie Glanton Steele*
CALLIE GLANTON STEELE
Senior Litigator
NEHA A. CHRISTERNA
Deputy Federal Public Defender

11