TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DAMARIS DIAZ (Cal. Bar No. 277524)
SCOTT M. LARA (Cal. Bar No. 296944)
Assistant United States Attorney
Violent & Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0302/0427
     Facsimile: (213) 894-3713
     E-mail:    damaris.diaz@usdoj.gov
                scott.lara@usdoj.gov

Attorneys for Plaintiff
United States of America

                UNITED STATES DISTRICT COURT

            FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR. No. 20-228(A)-ODW |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date: May 17, 2022 |
| MEI XING, | Place:      Courtroom of the Hon. Otis D. Wright, II |
| Defendant. | |

        Plaintiff United States of America, by and through its

attorneys of record, Assistant United States Attorneys Damaris

Diaz and Scott M. Lara, hereby file its Trial Memorandum.

//

//

1    The government respectfully requests permission to file

2  additional trial memoranda if necessary.

3

4  Dated: May 10, 2022            Respectfully submitted,

5                                 TRACY L. WILKISON
                                   United States Attorney

6                                 SCOTT M. GARRINGER
                                   Assistant United States Attorney
7                                  Chief, Criminal Division

8

9                                  _/s/_
                                   DAMARIS DIAZ
                                   SCOTT M. LARA
10                                 Assistant United States Attorney

11                                 Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

<u>**GOVERNMENT'S TRIAL MEMORANDUM**</u>

**I.   STATUS OF THE CASE**

    **A.   Jury Trial Is Set to Begin on May 17, 2022**

A jury trial against defendant Mei Xing ("defendant") is scheduled for May 17, 2016.  The government estimates that its case-in-chief will last approximately four to five days.  The government expects to call approximately 11 witnesses in its case-in-chief.  Neither party has waived the right to trial by jury.  A Mandarin Chinese language interpreter is needed for defendant.  The five victim witnesses all speak Mandarin as well -- the government is providing an interpreter for these witnesses.  Defendant is in custody.

    **B.   The Indictment**

Defendant is charged with five counts of sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a) related to five victims identified in the First Superseding Indictment.

**II.   ELEMENTS OF THE OFFENSES**

    **A.   Sex Trafficking in violation of 18 U.S.C. § 1591(a)**

The elements of sex trafficking by force, fraud, and coercion, in violation of 18 U.S.C. § 1591(a)(1), (a)(2), as charged in Counts 1 through 5, are as follows:  (1) The defendant knowingly: recruited, enticed, harbored, transported, provided, obtained, or maintained by any means the victim, or benefitted financially, or received anything of value, from participating in a venture which recruited, enticed, harbored, transported, provided, obtained, or maintained by any means the victim; (2) the defendant did so knowing that: means of force, threats of force, fraud, coercion, or any combination of such means, would be used to cause the victim to engage in a commercial sex act;

1 and (3) the recruiting, enticing, harboring, transporting, providing,

2 obtaining, or maintaining was in or affecting interstate commerce.

3 **III. STATEMENT OF FACTS**

4      This case centers on defendant's trafficking of five victims,

5 Victims 2, 3, 4, 5, and 6, for the purpose of commercial sex.  The

6 government expects to prove the following at trial, among other

7 things:

8      **A.   Victims 2, 3, 4, 5, and 6**

9      From about July 2016 to October 2018, defendant MEI XING

10 ("defendant") recruited five victims (the "Victims"), all recent

11 immigrants from China, to work at defendant's massage parlor.  At the

12 time they were hired, some of the Victims knew they would be expected

13 to perform commercial sex work, after arriving at the massage parlor

14 others observed that some women may have been performing commercial

15 sex work but thought it would be their option to refuse.

16      However, even with knowledge that commercial sex work occurred,

17 the Victims all believed they would have some control over what they

18 would be doing with their own bodies while working for defendant.

19      The Victims will testify that defendant engaged in fraud,

20 threats of force, and coercion to have the Victims engage in sex with

21 abusive customers, engage in unprotected sex, and perform sex acts

22 they objected to.  If the Victims protested or resisted, defendant

23 threatened to inform on the Victims to their families or report their

24 commercial sex activities to the police or immigration authorities,

25 or to criminals in the United States or China.  Defendant created an

26 atmosphere of coercion by consistently telling the Victims that she

27 ///

28 ///

1 | had relationships with the police, and that they would only be safe
2 | at her massage parlors.  Defendant even told some of the Victims that
3 | she could "buy a life" for $2,000.

4 | **B.   Law Enforcement Witnesses**

5 | The government also intends to call 6 law enforcement witnesses.
6 | Fresno Detective Fries will testify as a Human Trafficking Expert as
7 | referenced in the Government's Opposition to Defendant's Motion in
8 | Limine Preclude the Government's Trafficking Expert.  (Dkt. 129.)
9 | LASD Detective Stewart will testify to the course of the
10 | investigation, an undercover call, post-arrest interviews, and the
11 | search of defendant's residence at 305 W. Newby Avenue in San
12 | Gabriel.  LASD Detective Parga will testify to the search of
13 | defendant's massage parlor at 2821 Peck Road, Unit E, El Monte.  LASD
14 | Detective Duff will testify to the search of defendant's massage
15 | parlor at 9611 Garvey Avenue, Unit 201A, South El Monte.  FBI Special
16 | Agent Stanley Patrzalek will testify to the subsequent FBI
17 | investigation including advertisements discovered on the internet,
18 | and English language evidence seized from defendant's digital
19 | device(s).  LASD Reserve Deputy Ed Chen will testify to the Chinese
20 | language evidence seized from defendant's digital device(s).

21 | **IV.   PRETRIAL MOTIONS AND FILINGS**

22 | On May 6, 2022, the Court held a pretrial conference at which it
23 | discussed and provided its rulings on the motions in limine.  That
24 | same day, the Court issued a Minute Order (Dkt. No. 159) ruling on
25 | the following motions as follows:

26 | (1)  The Court denied defendant's Motion in Limine to Suppress
27 | post-arrest statements (Dkt. No. 92);

28 |

(2)   The Court denied defendant's Motion <u>in Limine</u> to Preclude Use of the Term "Victim" (Dkt. No. 93);

(3)   The Court denied defendant's Motion <u>in Limine</u> to Preclude the government's Trafficking Expert (Dkt. No. 94);

(4)   The Court granted the government's Motion <u>in Limine</u> Number 1 to Exclude Rule 412 Evidence (Dkt. No. 98);

(5)   Government's Motion <u>in Limine</u> Number 2 to admit defendant's prior convictions (Dkt. No. 101) was withdrawn based on the agreement of the parties that defendant would not deny knowledge of commercial sex work occurring at her direction or on her behalf (<u>see</u> Dkt. No. 158);

(6)   The Court granted the government's Motion <u>in Limine</u> Number 3 to Exclude Surreptitious Recordings (Dkt. No. 104);

(7)   The Court granted the government's Motion <u>in Limine</u> Number 4 to Exclude Evidence from Victims' Historical Immigration Records (Dkt. No. 107);

(8)   The Court denied defendant's Rule 412 motion (Dkt. No. 155).

On May 9, 2022, the Court issued a written order precluding defendant from calling an immigration expert to testify regarding the Victims' immigration records for the reasons set forth at the May 6, 2022 hearing.  (Dkt. No. 171.)

On May 10, 2022, the parties filed a Proposed Jury Verdict Form, and a Proposed Statement of the Case.  (Dkt. Nos. 172, 173).  The government anticipates filing jury instructions today.

///

///

///

4

**V.    EVIDENTIARY AND LEGAL ISSUES**

    **A.    Translations**

Many documents and recordings are in the Mandarin language and have been translated by certified Mandarin translators.  The government anticipates that the parties will stipulate to the accuracy of these translations.

    **B.    Authentication and Identification/Chain of Custody**

The government will seek to introduce physical evidence recovered from defendant's home, car, and businesses.  Federal Rule of Evidence 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must provide evidence sufficient to support a finding that the item is what the proponent claims it is."  Accordingly, under Rule 901, issues of authenticity and identification are treated as "a special aspect of relevancy."  Fed. R. Evid. 901(a) (Advisory Committee Notes).

Rule 901(a) only requires the government to make a prima facie showing of authenticity or identification "so that a reasonable juror could find in favor of authenticity or identification." United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991) (quoting United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989)). The authenticity of proposed exhibits may be proven by circumstantial evidence.  See United States v. King, 472 F.2d 1, 9-11 (9th Cir. 1972).  If the government makes a prima facie showing of authenticity, the Court should admit the evidence.  See Chu Kong Yin, 935 F.2d at 996; United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).  The credibility or probative force of the evidence

1   offered is ultimately an issue for the trier of fact.  <u>Chu Kong Yin</u>,

2   935 F.2d at 996.

3        To be admitted into evidence, a physical exhibit must be in

4   substantially the same condition as when the crime was committed.

5   Fed. R. Evid. 901.  The Court may admit the evidence if there is a

6   "reasonable probability the article has not been changed in important

7   respects."  <u>United States v. Harrington</u>, 923 F.2d 1371, 1374 (9th

8   Cir. 1991) (quoting <u>Gallego v. United States</u>, 276 F.2d 914, 917 (9th

9   Cir. 1960)).  This determination is to be made by the trial judge and

10  will not be overturned except for clear abuse of discretion.  Factors

11  the Court may consider in making this determination include the

12  nature of the item, the circumstances surrounding its preservation,

13  and the likelihood of intermeddlers having tampered with it.

14  <u>Gallego</u>, 276 F.2d at 917.

15       In establishing chain of custody as to an item of physical

16  evidence, the government is not required to call all persons who may

17  have come into contact with the piece of evidence.  <u>Harrington</u>, 923

18  F.2d at 1374.  Moreover, a presumption of regularity exists in the

19  handling of exhibits by public officials.  <u>Id.</u>  Therefore, to the

20  extent that alleged or actual gaps in the chain of custody exist,

21  such gaps go to the weight of the evidence rather than to its

22  admissibility.  <u>Id.</u>

23       **C.   Expert and Lay Opinion Testimony**

24       If specialized knowledge will assist the trier of fact in

25  understanding the evidence or determining a fact in issue, a

26  qualified expert witness may provide testimony in the form of an

27  opinion or otherwise.  Fed. R. Evid. 702.  The court has broad

28  discretion to determine whether to admit expert testimony.  <u>See,</u>

6

e.g., United States v. Bonilla-Guizar, 729 F.3d 1179, 1183 (9th Cir. 2013) (court's decision to admit expert testimony reviewed for abuse of discretion); United States v. Patterson, 819 F.2d 1495, 1507 (9th Cir. 1987) ("decision to admit expert testimony is committed to the discretion of the trial judge"). An expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703.

The admission of expert testimony or lay witness opinion testimony is within the discretion of the trial judge and will not be disturbed unless "manifestly erroneous." United States v. Fleishman, 684 F.2d 1329, 1335 (9th Cir. 1982); United States v. Skeet, 665 F.2d 983, 985-86 (9th Cir. 1982). An expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied on are of the type reasonably relied on by experts in the field. Fed. R. Evid. 703.

The government has given notice of one expert witness: Fresno Police Detective David Fries. As set forth in the government's expert notice and summarized in the government's opposition to the defendant's Motion in Limine to Exclude Expert Testimony, Detective Fries will provide expert testimony regarding massage parlor commercial sex trafficking operations, which assist the jury in understanding the dynamics of such operations.

### D.   Hearsay, Non-Hearsay, and Hearsay Exceptions

Federal Rule of Evidence 801(c) defines "hearsay" as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). While hearsay is not

7

admissible, the government will seek to introduce evidence that falls within non-hearsay and exceptions to the hearsay rules, some of which are described below.

### 1.   Defendant's Statements

A defendant's statement is admissible only if offered against her by the government.  See Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).  A defendant's statement is not hearsay if the defendant "manifested an adoption or belief in its truth . . . ."  Fed. R. Evid. 801(d)(2)(B).

A defendant, on the other hand, cannot elicit her own prior statements, either on direct examination of his own witness, or cross-examination of the government's witness, because those statements are inadmissible hearsay.  See United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000).  Indeed, even where the government elicits the inculpatory portion of a defendant's statement from a witness, on cross-examination, the defendant is not entitled to elicit any exculpatory portion.  See id. at 682.  Moreover, a defendant cannot rely upon Rule 801(d)(1)(B), as an alternative basis for the admissibility of such testimony.  A prior consistent statement is not admissible if it is introduced in the absence of impeachment.  See United States v. Navarro-Varelas, 541 F.2d 1331, 1334 (9th Cir. 1976).

Statements not offered for their truth, but to provide context for what the defendant has said, such as the statements of persons in a conversation with the defendant, are not hearsay.  United States v. Smith, 918 F.2d 1551, 1559 (11th Cir. 1990); United States v. McDowell, 918 F.2d 1004, 1007-08 (1st Cir. 1990).

8

1    At trial, the government intends to introduce evidence

2  pertaining to.

3        2.  Co-conspirator's Statements

4    Statements by one conspirator during the course of and in

5  furtherance of the conspiracy may be used against another conspirator

6  because such statements are not hearsay.  Fed. R.

7  Evid. 801(d)(2)(E).  The government intends to introduce these

8  statements for their truth under Rule 801(d)(2)(E).  In particular,

9  here, the government will introduce through Victim testimony co-

10 conspirator statements from "Johns" (i.e. commercial sex customers)

11 regarding the arrangements made with defendant for sex with the

12 Victims.  The law "favor[s] admission in conspiracy situations."

13 United States v. Lindemann, 85 F.3d 1232, 1238 (7th Cir. 1996).

14 There is independent evidence of the conspiracy, including Victim

15 testimony regarding co-conspirator conduct.  See United States v.

16 Castaneda, 16 F.3d 1504, 1507 (9th Cir. 1994) ("cannot rely solely on

17 the coconspirator statements themselves").  Co-conspirator statements

18 are admissible "notwithstanding the fact that the indictment does not

19 contain a conspiracy count." United States v. Manning, 56 F.3d 1188,

20 1197 (9th Cir. 1995) (quotations omitted).  Co-conspirator statements

21 are non-testimonial, fall within a "firmly rooted hearsay exception,"

22 and do not violate the Confrontation Clause.  United States v.

23 Larson, 460 F.3d 1200, 1213 (9th Cir. 2006) (citing Crawford v.

24 Washington, 541 U.S. 36, 56 (2004); Ohio v. Roberts, 448 U.S. 56, 66

25 (1980); Bourjaily, 483 U.S. at 183-184; and United States v. Hagege,

26 437 F.3d 943, 958 (9th Cir. 2006)).

27    Additionally, certain co-conspirator statements are not being

28 admitted for their truth, but rather for their effect on the

9

1    listener—the Victims.  See Fed. R. Evid. 801(c).  For example,
2    statements regarding defendant's ties to organized crime or to law
3    enforcement.

4         3.   Prior Consistent Identifications

5         Each of the victims has repeatedly identified defendant as their
6    trafficker.

7         Prior identifications may be admitted as non-hearsay if: (1) the
8    declarant made a prior statement of identification of a person after
9    perceiving that person; and (2) the declarant testifies at the trial
10   or hearing and is subject to cross-examination concerning the
11   statement.  See United States v. Owens, 484 U.S. 554, 561 (1988).
12   Identifications do not need to occur immediately after the declarant
13   viewed the person or a photograph of the person.  See id. at 556
14   (admitting an out-of-court identification of the defendant made by
15   the victim nearly a month after the alleged attack).  And prior
16   identifications made in-court, such as during a previous trial or
17   hearing, are also admissible under this rule.  See United States v.
18   Distler, 671 F.2d 954, 958 (6th Cir. 1981) (holding that
19   eyewitnesses' prior grand jury testimony in which they identified the
20   defendant was admissible as evidence during trial under Rule
21   801(d)(1)(C)).  In addition, a witness other than the declarant, such
22   as an investigating agent, may testify to a prior identification made
23   by the declarant, as long as both parties are present and can be
24   cross-examined.  See United States v. Shryock, 342 F.3d 948, 982 (9th
25   Cir. 2003) (holding that a police officer's testimony that the victim
26   had twice identified the defendant during the investigation was
27   admissible); United States v. Elemy, 656 F.2d 507, 508 (9th Cir.
28   1981) (concluding that testimony from an agent, who was available for

cross-examination, regarding identification statements he collected
from a witness was admissible).  This rule applies even if the prior
identifications were obtained in an allegedly suggestive manner, see
Perry v. New Hampshire, 565 U.S. 228, 233 (2012) (absent "improper
law enforcement activity," it is the jury's prerogative to weight the
credibility of the identifications), and are admissible absent a
showing that there was a "substantial likelihood of
misidentification," Neil v. Biggers, 409 U.S. 188, 201 (1972).

### 4.   Prior Consistent Statements

In addition to the identifications of defendant, should the
defendant attack the credibility of a testifying witness, the
government may seek to introduce other prior consistent statements
under Rule 801(d)(1)(B) of the Federal Rules of Evidence.  "The
district court has broad discretion in determining the admissibility
of a prior consistent statement under Fed. R. Evid. 801(d)(1)(B)."
United States v. Belfast, 611 F.3d 783, 816 (11th Cir. 2010)
(internal quotations omitted).

Prior consistent statements are admissible to rebut a charge of
recent fabrication or improper influence or motive.  Fed. R. Evid.
801(d)(1)(B); United States v. Stuart, 718 F.2d 931, 934 (9th Cir.
1983).  Rule 801(d)(1)(B) of the Federal Rules of Evidence provides
that:  "A statement is not hearsay if -- . . . the declarant
testifies at the trial or hearing and is subject to cross-examination
concerning the statement, and the statement is consistent with the
declarant's testimony and is offered: (i) to rebut an express or
implied charge against the declarant of recent fabrication or
improper influence or motive; or (ii) to rehabilitate the declarant's
credibility as a witness when attacked on another ground."

If the defense makes an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony—e.g., testimony in exchange for immigration benefits, or a new life in the United States—the witness' prior consistent statements are admissible under Rule 801(d)(1)(B)(i) as long as they pre-date the supposed motive to fabricate the statements.  See United States v. Chang Da Liu, 538 F.3d 1078, 1086 (9th Cir. 2008) (rejecting defendant's claim that victims fabricated their testimony in order to receive financial assistance because victims' in-court statements were largely consistent with statements made before the FBI began providing them with financial assistance); Arizona v. Johnson, 351 F.3d 988, 999 (9th Cir. 2003) (admitting victim's prior statement in a prosecution for sexual assault and kidnapping where defendant claimed that victim, a citizen of El Salvador who entered the United States illegally, fabricated her story because she wanted to stay in the United States for the duration of the investigation and trial).

Alternatively, should the defense attack a victim's credibility on "another ground," such as "inconsistency or faulty memory" the prior consistent statements would be admissible under Rule 801(d)(1)(B)(ii).  Fed. R. Evid. 801(d)(1)(B)(ii) & advisory committee's note to 2014 amendment.  If the defense does so that victim's prior consistent statements will be admissible under subsection (ii) not only to rehabilitate the victim's credibility, but also as substantive evidence against defendant.  See Fed. R. Evid. 801, advisory committee's note to 2014 amendment; see also, e.g., United States v. Purcell, 967 F.3d 159, 197 (2d Cir. 2020) (under amendment, victim's prior statements admitted through

investigating officer were not hearsay where her credibility was attacked); <u>United States v. Flores</u>, 945 F.3d 687, 705 (2d Cir. 2019) (prior statements admissible based on defendant's attack in opening statement); <u>United States v. J.A.S., Jr.</u>, 862 F.3d 543, 545 (6th Cir. 2017) (victim's video interview was properly admitted where defendant impeached the victim on collateral grounds); <u>cf.</u> <u>United States v. Portillo</u>, 969 F.3d 144, 174 (5th Cir. 2020) (distinguishing between "claim that [witnesses] fabricated their stories" and claims based on any other ground); <u>United States v. Magnan</u>, 756 F. App'x 807, 818 (10th Cir. 2018) (same).

The government anticipates that it may seek to rehabilitate certain witnesses with prior consistent statements.  For example, if the defense attacks the credibility of a victim on cross examination, which is likely, the rule permits the government to admit consistent portions of victims' prior interviews with law enforcement that tend to rehabilitate the victims' credibility.

5.   <u>Present Sense Impression and Excited Utterance</u>

Fed. R. Evid. 803(1) provides an exception to the hearsay rule for statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Also, Fed. R. Evid. 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is admissible evidence.  The Ninth Circuit has two requirements for a statement to qualify as an excited utterance: (1) there must be an exciting or startling event, and (2) the statement must be made while the declarant is still under the stress of excitement caused by the event.  <u>United States v. McLellan</u>, 563 F.2d 943, 948 (9th Cir.1977), <u>cert.</u> <u>denied</u>, 435 U.S. 969 (1978).

13

1    In order to admit evidence under a hearsay exception, the district

2    court must find by a preponderance of evidence that the foundation

3    requirements are satisfied.  McLellan, 563 F.2d at 948.

4         The government may seek to elicit testimony from witnesses that

5    fall within either one of these two rules.

6         **E.   Rule 412**

7         As stated above, this Court has ruled that defendant may not

8    bring up or question the Victims regarding their sexual history in

9    accordance with Rule 412 and Rule 403.

10        The government expects defense to attempt to circumvent this

11   ruling by arguing that they should be allowed to question a witness

12   related to their earlier prostitution activity to impeach their

13   truthfulness.  Defense may attempt to use cross examination

14   questions, prior T-Visa answers, or prior statements to do this.

15   This evidence is properly barred by Rule 412.  In an almost identical

16   circumstance, the court in Valenzuela rejected the argument that such

17   evidence should be admitted.  United States v. Valenzuela, No. CR 07-

18   00011 (A)-MMM, 2008 WL 2824958, at *3 (C.D. Cal. July 21, 2008)2008

19   WL 282; see United States v. Davis, No. CR 13-589-CAS, 2015 WL

20   519455, at *4 (C.D. Cal. Feb. 5, 2015)("impeaching a witness's

21   character for truthfulness is not a recognized exception to Rule

22   412's general prohibition of evidence of sexual history." )(citing

23   United States v. Tail, 459 F.3d 854, 859 (8th Cir. 2006).  The Ninth

24   Circuit agreed, upholding the exclusion of evidence of a prior

25   misstatement related to sexual history in a subsequent trial.  Hughes

26   v. Raines, 641 F.2d 790, 793 (9th Cir. 1981).

27        Further, defendant may not admit extrinsic evidence to impeach

28   testimony invited by questions posed during cross-examination.

1    <u>United States v. Castillo</u>, 181 F.3d 1129, 1133 (9th Cir. 1999).

2         Finally, defendant may not offer extrinsic evidence to prove

3    another bad act for truthfulness to impeach the veracity of the

4    victim's statements, unless it is a conviction.  <u>See United States v.</u>

5    <u>Jackson</u>, 882 F.2d 114, 1448 (9th Cir. 1989).

6         **F.   Scope of Cross Examination**

7         Cross examination should be limited to the subject matter of the

8    direct examination and matters affecting the credibility of the

9    witness.  The court may, in the exercise of its discretion, permit

10   inquiry into additional matters as if on direct examination.  Fed. R.

11   Evid. 611(b).  Additionally, under Federal Rule of Evidence 611(a),

12   "[t]he court should exercise reasonable control over the mode and

13   order of examining witnesses and presenting evidence so as to: (1)

14   make those procedures effective for determining the truth; (2) avoid

15   wasting time; and (3) protect witnesses from harassment or undue

16   embarrassment."

17        The government anticipates that defendant will seek to cross-

18   examine the Victims regarding their T-Visa applications, where

19   applicable, to establish potential bias and to impeach them with

20   alleged inconsistent statements.  To the extent defendant attempts to

21   introduce testimony or evidence regarding immigration matters outside

22   of the T-Visa applications, the government will object on the basis

23   of the Court's pre-trial rulings.

24        A defendant who testifies at trial waives his right against

25   self-incrimination and subjects himself to cross-examination

26   concerning all matters reasonably related to the subject matter of

27   his testimony.  The scope of defendant's waiver is co-extensive with

28   the scope of relevant cross-examination.  <u>United States v. Cuozzo</u>,

962 F.2d 945, 948 (9th Cir. 1992); <u>United States v. Black</u>, 767 F.2d 1334, 1341 (9th Cir. 1985).

     **G.    Impeachment by Extrinsic Evidence and Prior Inconsistent Statements**

Rules 607 and 608(b) do not permit the defendant to offer extrinsic evidence on a collateral issue -- i.e., only to contradict the witness.  Rule 607 permits a party to introduce extrinsic evidence to contradict a witness' statement on direct testimony. Fed. R. Evid. 607; <u>United States v. Castillo</u>, 181 F.3d 1129, 1132 (9th Cir. 1999).  The rule permitting contradiction by impeachment, however, is not without limits, the most basic being that a party may not use the rule to contradict a witness if the issue is "collateral" to genuine issues in the case -- i.e., that the only purpose for the evidence is to contradict the witness.  <u>United States v. Schwyhart</u>, 123 Fed. Appx. 62, 66 (3rd Cir. 2005)(unpub.)("We have recognized the doctrine of impeachment by contradiction, but it is limited by the collateral issue rule, which provides that evidence is inadmissible if it is offered solely for the purpose of contradiction and no other; that is, 'one may not contradict for the sake of contradiction; the evidence must have an independent purpose and an independent ground for admission.'" (quoting <u>United States v. Payne</u>, 102 F.3d 289, 294 (7th Cir. 1996)).

Similarly, Rule 608(b) provides that "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness'

16

character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." Fed. R. Evid. 608(b); see United States v. Hinkson, 526 F.3d 1262, 1306 (9th Cir. 2008) ("Rule 608(b) bars introduction of extrinsic evidence of a witness' past conduct.  On cross-examination, the witness may be impeached by referencing documents and probing the veracity of 'character for truthfulness or untruthfulness.' Nonetheless, Rule 608(b) 'limits the inquiry to cross-examination of the witness . . . and prohibits the cross-examiner from introducing extrinsic evidence of the witness' past conduct.'" (quoting United States v. Abel, 469 45, 55 (1984)).

Additionally, Federal Rule of Evidence 613(b) provides that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires.  This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2)."

## H.  Duplicates

"A duplicate is admissible to the same extent as an original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Fed. R. Evid. 1003; United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).  Here, many of the government's exhibits are duplicates of the originals.

///

///

17

1

**I.    Video and Audio Recordings**

2      The government will present recorded conversations in this case

3 in the form of recorded calls.  One or more witnesses will provide

4 the foundation for the calls the government selects to introduce at

5 trial and identify the voices of the persons speaking in the calls.

6 The foundation that must be laid for the introduction into evidence

7 of recorded conversations is a matter largely within the discretion

8 of the trial court.  There is no rigid set of foundational

9 requirements.  Rather, the Ninth Circuit has held that recordings:

10     [A]re sufficiently authenticated under Federal Rule of
       Evidence 901(a) if sufficient proof has been introduced so
11     that a reasonable juror could find in favor of authenticity
       or identification.  This is done by proving a connection
12     between the evidence and the party against whom the
       evidence is admitted, and can be done by both direct and
13     circumstantial evidence.

14 United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995),

15 modified, 98 F.3d 1100 (9th Cir. 1996)(internal citations and

16 quotations omitted).  Witnesses may testify competently as to the

17 identification of a voice on a recording.  A witness' opinion

18 testimony in this regard may be based upon his having heard the voice

19 on another occasion under circumstances connecting it with the

20 alleged speaker.  Fed. R. Evid. 901 (b) (5); United States v. Torres,

21 908 F.2d 1417, 1425 (9th Cir. 1990) (testimony of voice recognition

22 constitutes sufficient authentication).  Circumstantial evidence may

23 also be introduced to identify the speaker in an intercepted

24 conversation.  Fed. R. Evid. 901(b)(5), (6).

25     All duly admitted recorded conversations must be played in open

26 court.  Allowing jurors to take into the jury deliberation room

27 recorded conversations that were not played in open court is

28 structural error requiring automatic reversal if a defendant objects

1  to allowing the jurors to have the unplayed calls in the jury room.

2  United States v. Noushfar, 78 F.3d 1442, 1444-46 (9th Cir. 1996), as

3  amended, 140 F.3d 1244 (9th. Cir. 1998).

4      **J.    Transcripts of Recorded Conversations**

5          For recorded conversations in the English language, the

6  recording itself is the evidence and a transcript of the recording

7  may be provided to the jury in open court as an aid in following the

8  conversation.  United States v. Chen, 754 F.2d 817, 824 (9th Cir.

9  1985); United States v. Phillips, 577 F.2d 495, 501-02 (9th Cir.

10  1978).  However, the Ninth Circuit has recognized that when the

11  transcript is a translation from a foreign language into English, the

12  transcripts of the English translation are themselves the evidence

13  rather than the recordings.  United States v. Fuentes-Montijo, 68

14  F.3d 352, 355 (9th Cir. 1995) ("[W]hen faced with a taped

15  conversation in a language other than English and a disputed English

16  translation transcript, the usual admonition that the tape is the

17  evidence and the transcript only a guide is not only nonsensical, it

18  has the potential for harm."); United States v. Taghipour, 964 F.2d

19  908, 910 (9th Cir. 1992) (affirming instruction to the jury that tape

20  was the evidence for the portion of the conversation in English,

21  while the translated transcript was the evidence for the portion of

22  the conversation in Farsi).

23          Here, the recorded conversations are in English and Mandarin.

24  Witnesses will testify, or the parties will stipulate, as to the

25  meaning of the statements in Mandarin.  Accordingly, the government

26  has prepared transcripts of the Mandarin-only portions of the

27  recordings.  The transcripts should be provided to the jury as a

28  guide in open court, but should not be admitted into evidence or be

    allowed to go back with the jury during deliberations.

                            19

1    The "rule of completeness" set forth in Federal Rule of Evidence
2    106 is applicable where one party seeks to introduce a misleadingly
3    tailored snippet of a statement that creates a misleading impression
4    by being taken out of context.  It is entirely proper, however, to
5    admit segments of a statement without including everything, and
6    adverse parties are not entitled to offer additional statements just
7    because they are there and the proponent has not offered them.
8    United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996).  Rule
9    106 does not render admissible evidence that is otherwise
10   inadmissible under the hearsay rules.   Id.

11       **K.   Photographs**

12       The government intends to admit photographs of locations and
13   evidence taken by law enforcement.

14       Photographs may be admitted as relevant evidence under Federal
15   Rule of Evidence 401 if they illustrate a witness's testimony.  In
16   such circumstances, the photograph is authenticated if the witness
17   testifies that it is an accurate representation of facts of which the
18   witness has personal knowledge, and "the witness who lays the
19   authentication foundation need not be the photographer, nor need the
20   witness know anything of the time, conditions, or mechanisms of the
21   taking of the picture."  32 McCormick On Evid. § 215 (7th ed.); see
22   also Fed. R. Evid. 1002 Advisory Committee Note (2011).  Thus, for
23   example, it is suitable for a witness to identify a photograph by the
24   items or individuals depicted in it regardless of his knowledge of
25   the particular circumstances under which the photograph was taken.
26   "Under the Federal Rules, the witness identifying the item in a
27   photograph need only establish that the photograph is an accurate
28   portrayal of the item in question."  People of Territory of Guam v.

*Ojeda*, 758 F.2d 403, 408 (9th Cir. 1985).  Indeed, "[a] photograph can be authenticated by someone other than the photographer if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it."  See *United States v. Winters*, 530 F. App'x 390, 395 (5th Cir. 2013) (citations and quotations omitted).

**L.   Electronic Records**

Like other evidence, electronic data, including data seized from digital devices, can be authenticated in a variety of ways, including by a case agent with knowledge of the investigation.  See *United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006) (quoting Fed. R. Evid. 901(b)(4) (contents of email messages authenticated by its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances"); *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990) ("The government may authenticate a document solely through the use of circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery"); *United States v. Siddiqui*, 235 F.3d 1318, 1322–23 (11th Cir. 2000) (emails sufficiently authenticated by content and context by examining what was said in the messages as well as nicknames used within the messages).

**M.   Website Records**

The government anticipates introducing archived internet advertisements placed by defendant on various websites including backpage.com, adultfriendfinder.com, and others, seeking employees and soliciting customers.

21

1    Such records of "regularly conducted activity" fall within an

2    exception to the rule against hearsay and are admissible either

3    through "the testimony of the custodian or another qualified witness"

4    or "by a certification that complies with Rule 902(11)."  Fed. R.

5    Evid. 803(6)(D).  In this case, the government has chosen the latter

6    option with respect to certain records, and has provided copies of

7    those records in discovery to defense counsel along with

8    certifications by appropriately qualified custodians of records,

9    thereby affording opposing counsel "a fair opportunity to challenge

10   them."  Fed. R. Evid. 902(11).  To date, defendant has not raised any

11   objection to the admission of any of these business records.

12   **VI.  DEFENDANT'S CASE**

13        **A.    Evidence Related to Defenses**

14        Defendant has not given notice of any defenses, nor has

15   defendant produced any reciprocal discovery (except for the

16   recordings at issue in the government's Motion <u>in Limine</u> Number 3

17   (Dkt. 104)), despite the government's numerous requests.

18   Accordingly, to the extent that there exists reciprocal discovery to

19   which the government is entitled under Federal Rules of Criminal

20   Procedure 12.1, 12.2, 16(b), or 26.2 that defendant has not produced,

21   the government reserves the right to seek to have such materials

22   excluded at trial.  <u>See</u> <u>United States v. Young</u>, 248 F.3d 260, 269-70

23   (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape

24   evidence defendant did not produce in pretrial discovery where

25   defendant sought to introduce audiotape on cross-examination of

26   government witness not for impeachment purposes, but as substantive

27   "evidence in chief" that someone else committed the crime).

28

                                    22

**B.   Defense Expert Witnesses**

On the evening of May 5, 2022, defendant gave notice of her intent to call an immigration expert to testify regarding the Victims' immigration records.  At the final pretrial hearing on May 6, 2022, the Court heard argument regarding the government's motion to exclude evidence of the Victims' historical (pre-T-Visa Applications) immigration records, as well as defendant's recently noticed expert.  The Court granted the government's motion to exclude, as well as the government's oral motion to preclude defendant's immigration expert from testifying.  The Court issued a written order precluding defendant's immigration expert on May 9, 2022.

**C.   Cross-Examination of Defendant**

A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues she puts in dispute during direct examination.  "A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence."  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).  The government is not required to provide notice of matters about which it may seek to cross-examine defense witnesses, including defendant, should they testify.

**D.   Character and Impeachment Evidence**

The Supreme Court recognizes that character evidence— particularly cumulative character evidence—has weak probative value and great potential to confuse the issues and prejudice the jury.  See Michelson v. United States, 335 U.S. 469, 480, 486 (1948).  The Court has thus given trial courts wide discretion to limit the presentation of character evidence.  Id.

In addition, the form of the proffered evidence must be proper. Rule 405(a) of the Federal Rules of Evidence sets forth the sole methods for which character evidence may be introduced.  It specifically states that, where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation and (2) by testimony as to opinion.  Thus, a defendant may not introduce specific instances of his good conduct through the testimony of others.  See Michelson, 335 U.S. at 477.  On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue.  See Fed. R. Evid. 405(a).  In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests.  See Michelson, 335 U.S. at 481.  The only prerequisite is that there must be a good faith basis that the incidents inquired about are relevant to the character trait at issue.  See United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

### E.   Jury Nullification

To the extent defendant attempts to raise improper defenses, the Court should exclude any evidence or argument relating to any possible jury nullification defense.  Zal v. Steppe, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring) ("[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged.  Verdicts must be based on the law and the evidence, not on jury nullification as urged by either litigant.").

///

In particular, defendant in this case should not be permitted to introduce evidence concerning her personal history or hardships, the financial dependency of family members, having ailing family members, or having a difficult upbringing, since none is relevant to any material issue and its nonexistent or minimal probative value is substantially outweighed by the risk of unfair prejudice and confusion of the issues.  <u>See</u> Fed. R. Evid. 401, 403.