1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION
HONORABLE OTIS D. WRIGHT, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,

        Plaintiff,

 v.                              Case No.
                                 2:20-cr-00228-ODW
MEI XING,

        Defendant.
_____


REPORTER'S TRANSCRIPT OF PROCEEDINGS
JURY TRIAL - DAY 2
MAY 18, 2022
8:00 A.M.
LOS ANGELES, CALIFORNIA


APPEARANCES:

FOR THE PLAINTIFF:     MS. DAMARIS M. DIAZ
                         MR. SCOTT M. LARA
                         Assistant United States Attorneys
                         312 North Spring Street, 13th Floor
                         Los Angeles, California 90012

FOR THE DEFENDANT:     MS. NEHA A. CHRISTERNA
                         MS. CALLIE G. STEELE
                         Deputy Federal Public Defenders
                         321 East 2nd Street
                         Los Angeles, California 90012

_____

JUDY K. MOORE, CRR, RMR
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, #4455
LOS ANGELES, CALIFORNIA 90012
213.894.3539

1        (Proceedings commenced at 8:15 a.m.)
2        COURTROOM DEPUTY:  Calling Item 1, CR 20-228, United
3   States of America versus Mei Xing.
4        Counsel, may I have your appearances, please?
5        MS. DIAZ:  Good morning, your Honor.  Damaris Diaz
6   and Scott Lara for the United States.  With us at counsel table
7   is FBI Special Agent Corrie Lyle.
8        THE COURT:  Good morning to you three.
9        MS. DIAZ:  Thank you.
10       MS. CHRISTERNA:  Good morning, your Honor.  Neha
11  Christerna and Callie Glanton Steele on behalf of Mei Xing, who
12  is present and now being assisted by the Mandarin interpreter.
13       THE COURT:  Good morning to you ladies.
14       All right.  Anything we need to talk about outside
15  the presence of the jury?
16       MS. DIAZ:  Yes, your Honor.  One thing is we would
17  ask the Court for a ruling on defendant's motion to exclude
18  evidence relating to the police officer as to the threats made
19  to the victims after defendant's first arrest.  That evidence
20  will come up in our witness testimony today, so we would like
21  the Court to guide us on whether we can ask those questions.
22       THE COURT:  That request to exclude that evidence is
23  going to be denied.
24       MS. CHRISTERNA:  Can I briefly be heard?
25       THE COURT:  Sure.  As a matter of fact, is there a

1 renewal of your motion?

2 MS. STEELE: My motion for a mistrial?

3 THE COURT: Yes.

4 MS. STEELE: May I have a moment, your Honor?

5 COURTROOM DEPUTY: Remove your mask.

6 MS. STEELE: And I was speaking slowly, too.

7 COURTROOM DEPUTY: Yeah, but she needs the mic.

8 MS. STEELE: May I have a moment, your Honor?

9 THE COURT: Yes.

10 (Off the record.)

11 MS. STEELE: Your Honor, I did do some research last
12 night, and I believe that I was correct in stating that the --
13 Ms. Xing should not be shackled in front of the jury because it
14 gives the jury the impression that she is dangerous, as I cited
15 to the *Howard* case in the 9th Circuit, which specifically
16 stated that an individual determination of a person's,
17 essentially, like, dangerousness should be evaluated before
18 shackling them in court and especially in a trial where the
19 jury's going to be determining -- you know, they're the
20 trier-of-fact whether she's guilty or not. So we would make
21 the motion for a mistrial. We believe that she should have a
22 jury that has not seen her feet shackled.

23 As I indicated yesterday, the way the layout of the
24 court is, the jurors that were to the right from the bench,
25 from the Court's perspective, way to the right of the

1  courtroom, could see her feet shackled during jury selection,
2  so we would make a motion for a mistrial.
3          THE COURT:  Okay.  I thought about it.  I re-read
4  our dialogue from yesterday, and I thought about the fact that
5  a number of people during jury selection expressed the view
6  that merely because someone is here and that the case against
7  them has proceeded this far that there must be something -- and
8  one gentleman, he's not on the jury, but I thought it was
9  probably the most -- well, one gentleman indicated that the
10 Government is not in the business of wasting resources and if
11 it's gotten this far, there must be something.  So there's
12 something to your argument.
13         And I don't know that with you and Ms. Christerna
14 sitting between your client and the gallery that anyone would
15 have been able to see her feet.  I don't know, nor do I know
16 that they could not, nor do I know that if anyone who did see
17 it is now seated on the jury.  And the only way to find out
18 would be -- we would have to interview each and every one of
19 them, "Did you see shackles?  Did you see shackles?"  And by
20 doing that, we're going to alert everyone for certain that
21 she's in custody, and that defeats the purpose.
22         So I'm going to grant your motion.  And this is
23 going to be a big inconvenience to an awful lot of people.  The
24 Government had people, you know, coming from out of town, et
25 cetera, et cetera, et cetera, but sobeit.  Your motion for

1 mistrial is granted.

2     MS. DIAZ: Your Honor, may the Government be heard?

3     THE COURT: Sure.

4     MS. DIAZ: The Court appropriately counseled all of
5 the jurors and instructed them regarding burden of proof.
6 Whenever those comments regarding guilt, presuming guilt, were
7 raised, the Court appropriately addressed them with each juror,
8 admonished each juror, admonished the entire jury, multiple
9 times. The jury has been left with the firm belief that the
10 defendant is innocent until proven guilty.

11     In this case, there will be no question that the
12 defendant was arrested, twice. Her status as being in custody
13 is not relevant to the jurors' consideration of her guilt or
14 innocence of the charges. And the Court has already made an
15 individual determination with respect to the reasons why this
16 defendant should be shackled and stated so on the record.

17     There would be alternatives to a mistrial. If the
18 Court would give the Government a few moments to consider and
19 provide those to the Court --

20     THE COURT: Sure.

21     MS. DIAZ: -- we would ask for that time to consult.

22     THE COURT: All right.

23     MS. DIAZ: May I have ten minutes?

24     THE COURT: You can have whatever you wish.

25     MS. DIAZ: Thank you.

1                THE COURT:  We have blocked out the entire day,
2    haven't we?
3                MS. DIAZ:  We have.  Thank you, your Honor.  Are we
4    in recess or --
5                COURTROOM DEPUTY:  This Court is in recess.
6                (Recess from 8:22 a.m. to 8:35 a.m.)
7                MS. DIAZ:  Your Honor, the Government would ask the
8    Court to inquire of the jury if they -- that there were
9    important exhibits on the floor under counsel's table to see if
10   any of them could see under counsel's table during jury
11   selection.  I don't think any of the jurors in the box were any
12   that we had at the sidebar, and so it would only be if, in the
13   morning, before we moved them all to this side of the
14   courtroom, if any of them were seated in that area, could they
15   see under counsel's table because there are exhibits there that
16   they should not have seen before the trial.
17               THE COURT:  All right.  Then it puts me in a
18   position of basically questioning the veracity of counsel's
19   representation in open court that, apparently, based upon her
20   observations, she is aware of the fact that there were
21   individuals seated over there to their right, the Court's left,
22   and, as you said, they had a clear line of sight to their
23   client's feet.  I have to take an attorney's representation of
24   facts like that at face value.
25               MS. DIAZ:  I'm not --

1            THE COURT: No. Now, do I believe personally that
2   someone seated over there where the gentleman with the red tie
3   is, that he can see through Ms. Christerna and Ms. Steele and
4   see the defendant's feet? No, personally, I do not believe
5   that. But this is the representation that those who are seated
6   over there have made to me in open court, officers of the
7   Court.
8            MS. DIAZ: I do not discount the representations and
9   I do not discount --
10           THE COURT: Okay. Then there we are.
11           MS. DIAZ: -- that when they were standing at
12  sidebar, some jurors may have had an opportunity to see. I'm
13  asking the Court to determine whether the jurors that we had in
14  the witness box were among those who were seated on this side
15  of the courtroom in the morning and did see.
16           THE COURT: This is the danger, this is the problem:
17  To inquire of each one of them then alerts each one of them.
18  That's the problem.
19           MS. DIAZ: Of something that they should not -- it
20  doesn't have to be shackles. We don't have to ask them about
21  shackles. We have to say there's evidence or something that
22  they should not have seen before the trial started and we want
23  to know if they did, in fact, see under the defense counsel's
24  table, in the morning, when they were seated on that side of
25  the courtroom, if any of them even were on that side of the

1  courtroom.
2  THE COURT: In fairness to the Government, I will
3  entertain this folly, but I think it's dangerous. I think that
4  by doing it, we're doing exactly what we're trying to avoid.
5  But if that's what you want...
6  See, that's what I seem to be doing now the last 24
7  hours, I'm giving people what they ask for. Okay.
8  MS. STEELE: Your Honor, we would object to that.
9  First of all --
10  THE COURT: You know what?
11  MS. STEELE: Well, your Honor, if I may just be
12  heard?
13  THE COURT: Did I not give you what you asked for?
14  MS. STEELE: Yes, your Honor.
15  THE COURT: Sit down.
16  MS. STEELE: Your Honor, I would like to address the
17  Government's proposal.
18  THE COURT: And I'm going to recuse myself. Okay.
19  We're done. Seriously, we are done. I am no longer able to
20  dispassionately play this game anymore, because this is like
21  fun and games, and I do believe that intentional
22  misrepresentations are being made to the Court. I'm going to
23  recuse myself. I'm declaring a mistrial. It will go back on
24  the calendar, go back on the wheel for reassignment. We are
25  done.

1  COURTROOM DEPUTY: This Court is adjourned.

2  (Proceedings concluded at 8:39 a.m.)

4  CERTIFICATE OF OFFICIAL REPORTER

6  COUNTY OF LOS ANGELES  )
                         )
7  STATE OF CALIFORNIA   )

9  I, JUDY K. MOORE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS 18TH DAY OF MAY, 2022.

/s/Judy K. Moore
_____
JUDY K. MOORE, CRR, RMR
FEDERAL OFFICIAL COURT REPORTER