CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CALLIE GLANTON STEELE (Bar No. 155442)
Senior Litigator
(E Mail: Callie_Steele@fd.org)
NEHA A. CHRISTERNA (Bar No. 245191)
Deputy Federal Public Defender
(E-Mail: Neha_Christerna@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MEI XING

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DISTRICT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 20-228-FMO |
| Plaintiff, | **MEI XING'S RENEWED RULE 412 MOTION TO ALLOW INQUIRY AND EVIDENCE OF THE COMPLAINING WITNESSES' OTHER SEX WORK** |
| v. | |
| MEI XING, | |
| Defendant. | |

Defendant Mei Xing through her counsel of record, Senior Litigator Callie Glanton Steele and Deputy Federal Public Defender Neha A. Christerna, hereby renews her motion to include evidence of the government's witnesses' other sex work that occurred before and after the conduct alleged in the indictment.

///

///

///

///

///

1    This motion is based upon the attached Memorandum of Points and Authorities,
2    the Sixth Amendment to the United States Constitution, Rules 412 and 608 of the
3    Federal Rules of Evidence, all files and records in this case, and any further evidence as
4    may be adduced at the hearing on this motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: June 10, 2022         By  /s/ *Callie Glanton Steele*
                                  CALLIE GLANTON STEELE
                                  Senior Litigator
                                  NEHA A. CHRISTERNA
                                  Deputy Federal Public Defender

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................1

II. EVIDENCE TO BE OFFERED .........................................................................2

III. ARGUMENT .......................................................................................................5

    A. Ms. Xing has a constitutional right unimpeded by Rule 412 to confront the complaining witnesses with their histories of sex work and how those histories incentivize them to falsely accuse Ms. Xing to obtain immigration benefits. ................................................................................5

        1. A defendant has a constitutional right to explore on cross-examination and offer extrinsic evidence to prove a witness's bias and self-interest in accusing the defendant. ................................5

        2. Rule 412 does not bar evidence whose exclusion would violate the defendant's constitutional rights, including bias evidence. ................................................................................6

        3. Because of their histories of prostitution, the witnesses have greatly heightened incentives to fabricate claims that they were trafficked by Ms. Xing to ensure themselves immigration benefits. ................................................................................7

    B. The government's theory of the case also appears to open the door to evidence of the complaining witnesses' prior activities. ........................10

    C. The claims the witnesses have made about their prior histories of sex work are also relevant to showing both their bias and lack of credibility. ................................................................................11

IV. CONCLUSION .................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*United States v. Abel*,
 469 U.S. 45 (1984)...................................................................................... 5

*Burr v. Sullivan*,
 618 F.2d 583 (9th Cir. 1980) ...................................................................... 9

*Davis v. Alaska*,
 415 U.S. 308 (1974)........................................................................... 5, 9, 10

*Fessler v. Int'l Bus. Machines Corp.*,
 959 F.3d 146 (4th Cir. 2020) .................................................................... 12

*Fowler v. Sacramento Cnty. Sheriff's Dep't*,
 421 F.3d 1027 (9th Cir.2005) ..................................................................... 5

*United States v. Haines*,
 918 F.3d 694 (9th Cir. 2019) ............................................................... 10, 11

*Hughes v. Raines*,
 641 F.2d 790 (9th Cir.1981) .................................................................. 5, 12

*United States v. Noti*,
 731 F.2d 610 (9th Cir. 1984) ...................................................................... 6

*Olden v. Kentucky*,
 488 U.S. 227 (1988)................................................................................. 6, 7

*Pennsylvania v. Ritchie*,
 480 U.S. 39 (1987).............................................................................. 10, 12

*Rodi v. S. New England Sch. of L.*,
 532 F.3d 11 (1st Cir. 2008)....................................................................... 12

*S.M. v. J.K.*,
 262 F.3d 914 (9th Cir. 2001) .................................................................... 10

*United States v. Valenzuela*,
 2008 WL 2824958, at *3 (C.D. Cal. July 21, 2008) ................................. 10

*Delaware v. Van Arsdall*,
 475 U.S. 673 (1986)..................................................................................... 5

# TABLE OF AUTHORITIES

Page(s)

**Federal Statutes**

8 U.S.C. §1101 ................................................................................................... 7, 9

8 U.S.C. §1182 ................................................................................................... 8, 9

8 U.S.C. §1227(a)(2)(A)(i) ..................................................................................... 9

8 U.S.C. § 1255(l)(1)(B) ......................................................................................... 8

8 U.S.C. § 1427 .................................................................................................9, 10

18 U.S.C. §1591 ...................................................................................................... 1

**State Statutes**

Cal. P. Code 647(b) ................................................................................................ 3

**Regulations**

8 C.F.R. § 214.11 .................................................................................................... 8

8 C.F.R. § 245.23 .................................................................................................... 7

73 FR 75540-01 ................................................................................................... 8, 9

**Federal Rules & Regulations**

Fed. R. Evid. 412 ............................................................................................*passim*

**Constitutional Provisions**

U.S. Const. Amend. VI .......................................................................................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Mei Xing is charged in a First Superseding Indictment with sex trafficking, in violation of 18 U.S.C. §§1591(a)(1), (a)(2), and (b)(1). *See* Dkt 51. The complaining witnesses are expected to testify that they were hired to work at a massage parlor by Ms. Xing, that they did not know that sexual services were offered at the establishment, and that they thought they were being hired to perform nonsexual massages. Each will claim that Ms. Xing then forced or coerced her into providing sexual services to customers.

The complaining witnesses will make these claims even though each of them had worked as a prostitute prior to the conduct alleged in the indictment, including in other massage parlors, and even though each of them has since engaged in sex work. While Rule 412 generally bars evidence of an alleged victim's sexual history in cases involving alleged sexual misconduct, it has exceptions. The most relevant of those is an exception for evidence whose exclusion would violate the defendant's constitutional rights. Here, evidence of the alleged victims' histories of sex work is necessary to vindicate Ms. Xing's constitutional right to confront the complaining witnesses; to demonstrate their self-interest and bias in making claims against her; and to show how their histories render their claims of naivety here incredible. Perhaps most relevantly, by claiming that they were trafficked by Ms. Xing, the alleged victims have positioned themselves for immigration benefits that would not otherwise be available for people with their histories of sex work. Moreover, their histories of sex work make them reliant on government exercises of discretion within their immigration proceedings, and thus vulnerable to pressure to keep the government happy by aiding its prosecution of Ms. Xing. As explained below, the Constitution requires—and Rule 412 permits—that Ms. Xing have the opportunity to confront her accusers with the evidence of their prior

///

1

sex work as it relates to their bias, self-interest, and false claims of naivety about the massage parlor industry.

## II. EVIDENCE TO BE OFFERED

At trial, Ms. Xing intends to confront Witnesses 2-6[1] about their histories of prostitution both pre- and post-dating the alleged trafficking conduct in this case.

Witness 2 claims that she was tricked and forced into sex work by Ms. Xing from approximately November of 2017 to April of 2018. The defense plans to confront Witness 2 with evidence that before Witness 2 arrived in the United States on or about November 22, 2015, she worked as a prostitute at nightclubs in Guang Dong, China. She then came to the United States and worked as a prostitute in massage parlors, including one in Thousand Oaks, California. She also provided sex services to customers at a house located at 8819 1/2 Garvey Avenue in Rosemead, California in 2017. When she came to work for Ms. Xing, she brought some of her regular customers from Thousand Oaks. The defense also plans to confront her with evidence showing that after she stopped working for Ms. Xing, she continued to see some of the same customers she had seen during the time she was working with Ms. Xing and provided sexual services to private clients. In July of 2018, she worked for P. L. H. at a massage parlor and continued to work as a prostitute in 2018 and 2019.

Witness 3 claims that she was tricked and forced into sex work by Ms. Xing from approximately 2016 to October 23, 2018. At trial, Ms. Xing also intends to confront Witness 3 with evidence that before Witness 3 arrived in the United States on or about March of 2015, she worked as a prostitute in nightclubs in Guang Dong, China. She then came to the United States and worked as a prostitute in massage parlors. She also had private clients that she met with in homes, motels, and hotels.

---

[1] Ms. Xing has filed a motion *in limine* to preclude the government from referring to the complaining witnesses as "victims". Therefore, in this motion, they will be referred to as Witness 2, Witness 3, etc.

Prior to meeting Ms. Xing, Witness 3 had two arrests for prostitution, which occurred on February 23, 2016, and on March 9, 2016. In immigration documents, she has tried to explain away those arrests with claims of naivety similar to her claims here, saying that the first arrest occurred when she was innocently hired to do swimwear modeling at a private home, and the second occurred when she was innocently hired (by the same woman who hired her to "model") to give massages at a different private home. She had sex with customers at 8819 1/2 Garvey Avenue in Rosemead, California. After Ms. Xing's arrest on October 23, 2018, Witness 3 worked with P.L.H. and provided sexual services. Witness 3 then became a partner in the sex business with P.L.H. and continued to the provide sexual services to her customers. She continues working as a prostitute at a massage parlor.

Witness 4 claims that she was tricked and forced into sex work by Ms. Xing from December of 2016 to January of 2017. At trial, Ms. Xing will confront Witness 4 with evidence that she worked as a prostitute in Malaysia prior to coming to the United States in September of 2015. Then when she came to the United States, but prior to meeting Ms. Xing, Witness 4 was arrested for soliciting prostitution, in violation of California Penal Code 647(b), on or about May 5, 2016. Like witness 3, she has tried to explain away her prior prostitution arrest in immigration documents by claiming naivety that echoes and so casts doubt on her claims of naivety here: she claims that she was innocently hired to give massages at a private apartment with another woman and was shocked when police burst in four days later. She also worked for a massage parlor as a prostitute in or near Tracy, California. Witness 4 also worked for another massage business for someone named Judy. In 2017, she worked as a prostitute for another massage business called Garvey Therapy. She continued to work as a prostitute.

Witness 5 claims to have been tricked and forced into sex work by Ms. Xing from July of 2016 to May of 2017. At trial, Ms. Xing will confront her with evidence that she was arrested for prostitution months before meeting Ms. Xing. Like Witnesses

3 and 4, she has explained that arrest in immigration documents by claiming naivety similar to what she claims here: she claimed that she was hired to give massages, but only upon arriving at the location after a taxi ride from Rosemead to Santa Barbara discovered that it was a private house with one other woman giving massages; that she asked to leave but the other woman said there was no one to take her back; and that police burst in when her very first client was taking a shower prior to any massage work.  She worked for another massage parlor as a prostitute in 2017.  In 2018 she worked as a prostitute for Garvey Therapy.  She continued to work as a prostitute and was arrested on September 9, 2021, for conduct related to prostitution at Swan Massage, located at 9845 Garvey Avenue in El Monte, California.

       Witness 6 claims she was tricked and forced into sex work by Ms. Xing from approximately January of 2017 to October of 2018.  At trial, Ms. Xing will confront her with evidence that before she arrived in the United States on or about March 11, 2015, she had worked as a prostitute at nightclubs in Guang Dong, China.  She then came to the United States and worked as a prostitute in massage parlors.  She also had private clients that she met with in homes, motels, and hotels.  She had sex with customers at 8819 1/2 Garvey Avenue in Rosemead, California.  After Ms. Xing was arrested on October 23, 2018, Witness 6 continued to work at Garvey Therapy as a prostitute.  She continued working as a prostitute with private clients and in massage parlors for P.L.H. including in December of 2019.

///
///
///
///
///
///
///

### III. ARGUMENT

**A. Ms. Xing has a constitutional right unimpeded by Rule 412 to confront the complaining witnesses with their histories of sex work and how those histories incentivize them to falsely accuse Ms. Xing to obtain immigration benefits.**

**1. A defendant has a constitutional right to explore on cross-examination and offer extrinsic evidence to prove a witness's bias and self-interest in accusing the defendant.**

"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Davis v. Alaska,* 415 U.S. 308, 315 (1974). This includes not just physical confrontation but cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). More particularly, the constitutional right to confrontation includes the right to confront and cross-examine witnesses about their biases and self-interest in bearing witness against the defendant: "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 679. *See also Davis*, 415 U.S. at 316-17 ("[t]he partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony" (internal quotation marks and citation omitted)). As the Ninth Circuit has put it, the Sixth Amendment protects "the right to cross-examine witnesses to attack their general credibility or to show their possible bias or self-interest in testifying." *Hughes v. Raines*, 641 F.2d 790, 792 (9th Cir.1981); *see also United States v. Abel*, 469 U.S. 45, 50 (1984) (the Confrontation Clause "requires a defendant to have some opportunity to show bias on the part of a prosecution witness").

The Sixth Amendment right to cross-examination is "implicate[d]" when "a jury 'might reasonably' have questioned the witness's reliability or credibility in light of the cross-examination." *Fowler v. Sacramento Cnty. Sheriff's Dep't*, 421 F.3d 1027, 1036 (9th Cir.2005) (quoting *Van Arsdall*, 475 U.S. at 679). Moreover, the right to cross-

examine for bias includes the right to introduce evidence to rebut witness denials: "the adverse party does not have to accept the witness' testimony, but may offer extrinsic evidence to rebut it." *United States v. Noti*, 731 F.2d 610, 613 (9th Cir. 1984).

### 2. Rule 412 does not bar evidence whose exclusion would violate the defendant's constitutional rights, including bias evidence.

In a proceeding involving "alleged sexual misconduct," Rule 412 bars "(1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition." Fed. R. Evid. 412 (a). The rule, however, includes exceptions, including one excepting from the rule "evidence whose exclusion would violate the defendant's constitutional rights." Fed. R. Evid. 412 (b)(1)(C).

As the Advisory Committee on Rules has made clear, that exception exists in great part to ensure that the Rule will not impede bias cross-examination. Indeed, the advisory committee cited as its explanation for the exception a bias case, *Olden v. Kentucky*, 488 U.S. 227 (1988). *See* Fed. R. Evid. 412, cmt. n. 1994 amendment. In *Olden*, the state court prevented the defendant in a rape prosecution from introducing evidence that the victim was in a relationship with a witness who had seen the defendant drop her off that evening and to whom she had first asserted that she had been raped. 488 U.S. at 228–30. The defense theory was that the alleged victim had fabricated the rape story to protect her relationship with the witness, who might otherwise have questioned what she was doing in the car with the defendant. *Id.* at 230. The state court excluded the evidence because it was concerned that the interracial relationship would prejudice the alleged victim in the eyes of the jury. *Id.* at 230-31. The Supreme Court reversed, holding that the state court denied defendant his constitutional right to confrontation by preventing him from engaging in "cross-examination designed to show a prototypical form of bias on the part of the witness" in a situation in which "a reasonable jury might have received a significantly different

impression of the witness' credibility had defense counsel been permitted to pursue his proposed line of cross-examination." *Id.* at 232 (internal quotation marks, citations, and alterations omitted).

      **3.      Because of their histories of prostitution, the witnesses have greatly heightened incentives to fabricate claims that they were trafficked by Ms. Xing to ensure themselves immigration benefits.**

Here, the complaining witnesses' histories of sex work are necessary to reveal their bias and self-interest in claiming that they were trafficked by Ms. Xing. For four of the witnesses, that bias centers on their applications for T-visas. For the fifth, who is already a permanent resident, her bias centers on avoiding possible immigration consequences to her history of sex work.

Except Witness 2, each of the complaining witnesses has a pending application for or has received during the pendency of this case a T-visa, a very advantageous form of immigration relief.[2] *See* 8 U.S.C. §1101(a)(15)(T). A T-visa allows a victim of sex trafficking to remain in the United States for up to four years, so long as they comply with reasonable law enforcement requests for assistance.[3] Family members of victims can also get T-visas, and all T-visa holders and family members with derivative status can apply to adjust status and become permanent residents at the end of the 4 years. *See* 8 C.F.R. § 245.23. Additionally, T-visa holders and applicants are eligible for employment authorization, housing, food, and income assistance, and even health care.[4]

---

[2] Witness 4 received a T-visa in 2020, during the investigation in this case, while Witnesses 3, 5, and 6, have pending applications.

[3] USCIS Services, "Victims of Human Trafficking: T Nonimmigrant Status," https://www.uscis.gov/humanitarian/victims-of-human-trafficking-and-other-crimes/victims-of-human-trafficking-t-nonimmigrant-status (last visited May 24, 2022).

[4] *See id.*; Office of Refugee Resettlement, Dept. of Health and Human Services, "Fact Sheet: Victim Assistance," https://www.acf.hhs.gov/orr/fact-sheet/fact-sheet-victim-assistance-english (last visited May 24, 2022).

7

Even more relevant, given the histories of the complaining witnesses, "[t]he T Visa has one of the most generous waivers in all of immigration law."[5] Immigration law generally bars as inadmissible anyone who has "engaged in prostitution within 10 years of the date of application for a visa, admission or adjustment of status." *See* 8 U.S.C. §1182 (a)(2)(D). But for a T-visa applicant, Homeland Security may waive that bar if the activities were "caused by or incident to" the victimization making them T-visa eligible. *See* 8 U.S.C. §1182 (a)(d)(13)(B)(ii).

T-visa holders also get a significant benefit—and one particularly relevant to the bias here—when they try to change their status at the end of the four-year T-visa period. Whereas generally green card applicants must show that they have not engaged in prostitution at any time during the prior ten years, 8 U.S.C. §1182(a)(2)(D), a T-visa holder need only show that she has not engaged in prostitution during the four-year period that she has the T-visa. *See* 8 U.S.C. § 1255(l)(1)(B); 73 FR 75540-01 (if "the applicant engaged in prostitution . . . before he or she was first lawfully admitted as a T-1 nonimmigrant (which in many cases will be related to the trafficking of that individual), USCIS will not consider the applicant to be statutorily precluded under section 101(f)(3) of the Act from establishing that he or she is a person of good moral character").

These benefits make the witnesses' prior sex work highly relevant to their bias in testifying, separate and above their basic incentivize to fabricate claims of trafficking to qualify for the T-visa.[6]

---

[5] *Id.*

[6] The bias is just as great for Witness 4, who already has a T-visa, as for the three whose applications are still pending. That is because the T-visa can be revoked at any time if the government determines the person did not actually meet its requirements; if a law enforcement officer notifies USCIS that the visa holder has failed to comply with a reasonable request for assistance; or if a law enforcement officer who provided an initial endorsement of the application disavows their prior support. *See* 8 C.F.R. § 214.11. Accordingly, she retains all the same incentivizes to keep the government happy and have it continue to exercise discretion in her favor, for instance by interpreting her past history of prostitution as "incident to" her alleged trafficking.

8

First, their histories as sex workers put them at the mercy of the government in terms of granting them waivers under 8 U.S.C. §1182 (a)(d)(13)(B)(ii). In particular, they need to curry the favor of the government so that it interprets their sex work histories as "incident to"—rather than separate from—their alleged trafficking, and uses its discretion to grant the waivers. Like the witness in *Davis v. Alaska* who was beholden to the government because of his vulnerable status as a probationer, the fact that the witnesses are hoping the government will look past their other sex work and grant them T-visas creates an interest about which Ms. Xing has the constitutional right to confront them. See *Davis*, 415 U.S. at 317-18.

Second, their histories as sex workers give them additional reason to seek (and try to retain) T-visas over other forms of relief, because of the differences in adjusting status. For many other forms of immigration relief, in order to adjust status and get green cards, the witnesses they would have to prove that they had not engaged in prostitution for at least ten years, *see* 8 U.S.C. §1182 (a)(2)(D)—something that they cannot hope to do, given their histories. But if they are able to get and keep T-visas, any sex work that they engaged in prior to receiving the visa is, in essence, expunged for the purposes of changing status. See 73 FR 75540-01. That access to permanent residency that would otherwise be out of reach because of their sex work histories gives those sex work histories additional relevance to bias.

Witness 2, the witness with permanent residency and no T-Visa application, also has relevant bias that relates to her prior sex work—separate and above her incentives to falsely claim she was trafficked to avoid being prosecuted and convicted for a potentially deportable offense, *see* 8 U.S.C. §1227(a)(2)(A)(i); *Burr v. Sullivan*, 618 F.2d 583, 586–87 (9th Cir. 1980). For example, if Witness 2 ever hopes to be naturalized as a United States citizen, she must demonstrate good moral character. See 8 U.S.C. § 1427(a)(3). Under the law, a person who engages in prostitution is not of good moral character. See 8 U.S.C. § § 1101(f) & §1182(a)(2)(D). While the period for showing good moral character is usually 5 years, the government has the discretion

to look back to any prior period. *See* 8 U.S.C. § 1427(e). Since the government has the discretion to consider or not consider Witness 2's older history of sex work in deciding whether to grant any application for naturalization, that history puts her in the same boat as the other complaining witnesses: vulnerable and with incentives to keep the government happy by saying whatever is necessary to make this prosecution successful. *See Davis*, 415 U.S. at 317-18.

**B.  The government's theory of the case also appears to open the door to evidence of the complaining witnesses' prior activities.**

The constitutional right to confrontation and cross-examination also includes the right to confront and dispel misimpressions fostered by the government's witnesses' claims. *See, e.g.*, *Pennsylvania v. Ritchie,* 480 U.S. 39, 51-52 (1987)(plurality) ("[o]f course, the right to cross-examine includes the opportunity to show . . . that the testimony is exaggerated or unbelievable"); *Davis,* 415 U.S. at 316 (counsel for the accused is "permitted to delve into the witness' story to test the witness' perceptions and memory, [and] . . . has traditionally been allowed to impeach, i.e., discredit, the witness").

Consistent with this, the Ninth Circuit has recognized that Rule 412 is no bar to evidence of a witness's prior sexual activities where the government opens the door by "elicit[ing] testimony suggesting that [the defendant] introduced [the complaining witness] to prostitution or that she was . . . 'an innocent lamb led to the slaughter.'" *See United States v. Haines*, 918 F.3d 694, 700 (9th Cir. 2019); *see also S.M. v. J.K.*, 262 F.3d 914, 919-20 (9th Cir. 2001) (plaintiff in civil case can open the door to evidence that would otherwise violate Rule 412). As another Judge of this Court has put it, if the government suggests "that the victims were not prostitutes or did not expect to engage in prostitution in the United States . . . it will have put those victim' sexual histories at issue," and possibly make evidence rebutting those suggestions admissible under Rule 412(c). *See United States v. Valenzuela*, No. CR 07-00011 (A)-MMM, 2008 WL 2824958, at *3 (C.D. Cal. July 21, 2008).

10

Here, the witnesses claim that they had no idea that the massage parlor that Ms. Xing hired them to work at provided sexual services. They are also claiming that, despite having no massage licenses, they were being hired to give real massages, and not to provide sexual services. But this feigned naivety about the San Gabriel Valley massage parlor industry, with the suggestion that they were innocent lambs led to the slaughter, opens the door to evidence that they were veterans of the industry who signed on understanding exactly what the business did and its terms of employment. *See Haines*, 918 F.3d at 700. The point is not that they had a predisposition to prostitution, but that given their histories, they cannot claim that they did not know what massage parlor work involved or that were tricked into coming to work with Ms. Xing and providing sexual services.

**C. The claims the witnesses have made about their prior histories of sex work are also relevant to showing both their bias and lack of credibility.**

At least 3 of the complaining witnesses have prior arrests for prostitution. As noted above, in their immigration applications, those witnesses have claimed that the arrests resulted from naivety very similar to what they claim here. They say that despite being hired to give massages or model swimwear under seemingly obviously suspicious circumstances, they were shocked to be arrested for prostitution. *See* Section II, *supra* (describing claims about arrests made by Witnesses 3-5). Ms. Xing's constitutional rights to confrontation—and thus the exception under Rule 412(c)—require that she be able to cross-examine the Witnesses about their past arrests, for at least two reasons.

First, the witnesses' claims to have been surprised to discover that the massage parlor where they worked with Ms. Xing provided sexual services become much less believable in light of their having previously claimed to have been surprised on prior occasions by vice raids on massage businesses. The jury might legitimately question how often a person could be exposed to the underbelly of the massage/ sex work

industry and still be surprised to learn that massage is often a euphemism for sex work. As Courts have recognized and common-sense tells us, a person cannot credibly claim to have been repeatedly fooled by the same thing. *See, e.g.*, *Fessler v. Int'l Bus. Machines Corp.*, 959 F.3d 146, 154 n.7 (4th Cir. 2020) (factfinder entitled to apply version of "fool me once, shame on you," to discredit person's claim to have been misled); *Rodi v. S. New England Sch. of L.*, 532 F.3d 11, 17–18 (1st Cir. 2008) (same). Attacks on the credibility of a witness's testimony are central to the constitutional right to confrontation. *See, e.g.*, *Ritchie,* 480 U.S. at 51-52; *Hughes*, 641 F.2d at 792.

Second, the apparent falsehoods in their immigration documents show the witnesses' bias clearly and directly, demonstrating that they are willing to lie to avoid trouble and obtain immigration benefits. Since Ms. Xing is arguing that these witnesses are using this prosecution to obtain and keep immigration benefits, and to avoid prosecution for prostitution by blaming Ms. Xing for their actions, their willingness to lie about those same actions to obtain benefits in other contexts is particularly relevant. Ms. Xing must be allowed to inquire about it.

## IV.  CONCLUSION

Ms. Xing respectfully requests that the Court grant her a fair opportunity to confront the witnesses about their sex work before and after they worked with Ms. Xing and their biases stemming from it as relates to this proceeding.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  June 10, 2022            By  */s/ Callie Glanton Steele*
CALLIE GLANTON STEELE
Senior Litigator
NEHA A. CHRISTERNA
Deputy Federal Public Defender

12