CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
NEHA A. CHRISTERNA (Bar No. 245191)
Deputy Federal Public Defender
(E Mail: Neha_Christerna@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-6075
Facsimile: (213) 894-0081

CALLIE GLANTON STEELE, ESQ. (Bar No. 155442)
(E-mail: calliesteeleesq@gmail.com)
2222 Foothill Boulevard, Suite 301
La Cañada, Flintridge, California 91011
Telephone: (626) 405-4910
Facsimile: (626) 388-9759

Attorneys for Defendant
MEI XING

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br> v.<br><br> MEI XING,<br><br>  Defendant. | Case No. CR 20-228-FMO<br><br>**MEI XING'S MOTION TO EXCLUDE TESTIMONY OF GOVERNMENT'S WITNESS DETECTIVE DAVID M. FRIES**<br><br>Hearing Date: February 10, 2023<br>Hearing Time: 2:00 p.m. |

Defendant Mei Xing, by and through her attorneys of record, Callie Glanton Steele, Esq., and Deputy Federal Public Defender Neha A. Christerna, hereby files the attached motion to exclude the testimony of Detective David M. Fries, or in the alternative for a *Daubert* hearing regarding the admissibility of such testimony.

1

This motion is based upon the attached memorandum of points and authorities, exhibits, all files and records in this case, and any further evidence and argument as may be presented at the hearing on this motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: December 16, 2022   By  */s/ Neha A. Christerna*
NEHA A. CHRISTERNA
Counsel for Mei Xing

# MEMORANDUM OF POINTS AND AUTHORITIES
## I. INTRODUCTION

Mei Xing is charged in a First Superseding Indictment with sex trafficking, in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), and (b)(1). (Dkt # 51). The government alleges that Ms. Xing forced the complaining witnesses to engage in sex work at a massage parlor that she managed. Trial is scheduled for February 28, 2023.

On February 1, 2021 the government provided notice that it intends to call Fresno Police Detective David M. Fries as an expert on "sex trafficking and prostitution." (*See* Exhibit "A"). On April 21, 2022, the government provided a supplemental expert notice. (*See* Exhibit "B," supplemental notice). On December 9, 2022, the government provided a supplemental disclosure with the only change noted as Detective Fries' title and the amount of time he has been at the Fresno Police Department. (*See* Exhibit C). The disclosure confirmed that Detective Fries has served as an expert in one prior case and has one publication. The fact still remains that Detective Fries' testimony should be excluded. The government is attempting to improperly boost its witnesses' testimony by introducing an expert with only general knowledge of sex trafficking.

## II. ARGUMENT

**A. Detective Fries' Testimony Will Offer Biased and Subjective Opinions that Cannot be Assessed for Reliability and Violates Federal Rule of Evidence 702 and *Daubert*.**

The government is attempting to admit testimony from an "expert" on the basis that it will assist the jury in understanding the evidence and to help evaluate the credibility of the witnesses. However, the government's purported justification for the testimony it is not sufficient for purposes of Federal Rule of Evidence 702.

Expert testimony "is admissible under Rule 702 if the subject matter issue is beyond the common knowledge of the average layman, the witness has sufficient

3

expertise, and the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." *United States v. Winters*, 729 F.2d 602, 605 (9th Cir. 1984). To aid the jury, expert opinions must be "based on sufficient facts or data" and be "the product of reliable principles and methods." Fed. R. Evid. 702(b)–(c). Moreover, the witness must "reliably appl[y] the principles and methods to the facts of the case." Fed. R. Evid. 702(d).

Expert testimony is admissible only if it is both reliable and relevant. "[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)); *United States v. Harmanek*, 289 F.3d 1076, 1093 (9th Cir. 2002). "'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.' . . . Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92 (quoting 3 Weinstein & Berger ¶ 702[02] at 702-18). Even the testimony of a highly credentialed expert must be excluded if it is deficient in some other essential respect. *Kumho Tire*, 526 U.S. at 153.

Courts must pay particular attention in assessing the admissibility of expert testimony because it carries the "aura of special reliability and trustworthiness" and raises a substantial danger of undue prejudice. *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973). The court has wide latitude to exclude expert testimony, *United States v. Byers,* 730 F.2d 568, 571 (9th Cir. 1984), and its decision will not be overturned absent an abuse of discretion, *United States v. Ortland*, 109 F.3d 539, 544 (9th Cir. 1997).

The Government, as the proponent of the expert testimony, has the burden of showing that it should be admitted. *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004). To satisfy *Daubert* and *Kumho Tire*, the offering party must make a showing to the Court that the expert opinion is necessary, relevant, reliable, and based on proper

qualifications. In turn, relevance must be evaluated against potential prejudice to the defendant, under Fed. R. Evid. 403. Reliability is measured through the methodology upon which an expert bases his opinions. *See United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also United States v. Nacchio*, 519 F.3d 1140, 1154 (10th Cir. 2008) (trial court erred in failing to hold hearing to test expert's methodology before excluding the testimony under Fed. R. Evid. 403).

In the present case, the Government fails to meet any of the requirements for admissibility of expert testimony. Instead, Detective Fries is essentially a third prosecutor offering his thinly veiled, subjective opinion regarding Ms. Xing's alleged intent and conduct. As the Second Circuit has previously noted:

> [I]t is a little too convenient that the Government has found an individual who is expert precisely on those facts that the Government must prove to secure a guilty verdict – even more so when that expert happens to be one of the Government's own investigators … When the Government skips the intermediate steps and proceeds from internal expertise to trial, and when those officer experts come to court and simply disgorge their factual knowledge to the jury, the experts are no longer aiding the jury in factfinding; they are instructing the jury on the existence of facts needed to satisfy the elements of the charged offense.

*United States v. Mejia*, 545 F.3d 179, 191 (2d Cir. 2008). Detective Fries' purported testimony, not surprisingly, is tailor-made for the prosecution's theory, and amounts to little more than a law enforcement profile. It usurps the role of the jury rather than assists with their deliberation. Whether or not the witnesses voluntarily engaged in sex work or were forced is an ultimate legal conclusion for the jury and only the jury to decide.

In order for Detective Fries' testimony to be permissible under Rule 702, the "*methods*" he used at arriving at any specific opinion must be "both reliable and adequately explained." *United States v. Vera*, 770 F.3d 1232, 1236 (9th Cir. 2014). A court must determine whether or not the method by which that evidence was obtained was generally accepted by experts in the particular field in which it belongs. *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

Here, the government is merely relaying upon Detective Fries' law enforcement background, which alone, is not sufficient, especially since empirical research provides data that law enforcement officers frequently misidentify victims of trafficking and conflate trafficking with prostitution.[1] As such, Detective Fries' 27 plus years in law enforcement does not qualify him as an expert witness in this case. "[B]are qualifications alone cannot establish the admissibility of scientific expert testimony." *United States v. Hermanek*, et.al., 289 F.3d 1076, 1093 (9th Cir. 2002). Although Detective Fries may have some anecdotal information based upon his experience investigating sex trafficking and prostitution in Fresno, California, he fails to clearly distinguish between the two, which demonstrates that he is not qualified as an expert on this subject and that his testimony will confuse the jury. He simply is not qualified to opine on whether a specific witness in the instant case was forced to engage in prostitution. Detective Fries was not involved in the investigation of this specific case and his experience arises from a totally different region of California, specifically from Fresno, California. All of the witnesses in this case are from China and engaged in prostitution in the South San Gabriel area. Therefore, his opinion as to whether someone was forced into sex work does not have any reliable basis; the opinions are merely anecdotal and the government has provided no information as to how his opinions would be generalizable to other locations including the jurisdiction of the present matter. Such opinions are not helpful to a jury and to admit them violates Rule 702 and *Daubert*.

---

[1] *Police perceptions of human Failing victims? Challenges of the police response to human trafficking* – A. Farrell, M, Dank, I. de Vries, M. Kafafian, A. Hughes, S. Lockwood, July 31, 2019 (https://onlinelibrary.wiley.com/doi/full/10.1111/1745-9133.12456, last visited Dec. 16, 2022).

B. **Detective Fries' Proposed Testimony is Unreliable, Irrelevant, Prejudicial, Would Elicit Hearsay, and Should be Excluded Under 403.**

If the Court determines that the proposed testimony constitutes permissible expert opinion it must still conduct a balancing test under Federal Rule of Evidence 403 to ensure that the testimony is not unfairly prejudicial. If Detective Fries is allowed to testify, the prejudice to Ms. Xing is significant. The government intends to have Detective Fries testify about the ways in which a sex trafficking organization operates. This creates a dangerous and prejudicial assumption that they all operate in the same way. Further, the government has indicated that the purported testimony will help the jury evaluate the witnesses' creditability, or in other words, will boost their credibility.

Detective Fries' testimony should be excluded because its probative value is slight and substantially outweighed by its prejudicial effect. Additionally, if the testimony is admitted the jury will be misled, there will be undue delay, and time will be wasted. At trial, the government's five complaining witnesses will testify to these exact topics. An unqualified expert with methods that have been untested will not assist the jury. Moreover, Detective Fries' testimony would result in the government eliciting inadmissible hearsay. The government incorrectly claims that Ms. Xing forced the witnesses to use drugs while they worked for her. In their expert disclosure, the government states the following:

> Detective Fries will also testify that sex traffickers sometimes have their victims use drugs to get them addicted and coerce them into continue their commercial sex work for the human trafficker. *Detective Fries has heard of human traffickers in massage parlors using drugs as a method of control for victims, but he has not personally experienced this in his cases.* Detective Fries has found this method of control to be more prevalent in human trafficking cases generally than in the massage parlor context, but he has heard of it occurring.

(*See* Exhibit "A," emphasis added). The government plans to elicit testimony from Detective Fries of topics that he does not have experience with but has "heard" of. Unlike the defense's expert witness, Dr. Kimberly Mehlman-Orozco, who bases her opinions off of reliable, state of the science research, which is published in peer-reviewed journal articles, the government has provided no methodological basis for Detective Fries' testimony other than his anecdotal experience, which is not generalizable and is unreliable, prejudicial, and contrary to the Federal Rules of Evidence.

The only purpose of Detective Fries' testimony would be to misinform the trier of fact and/or evoke an emotion that would inflame the jury, as it has little probative value. Thus, the testimony should be excluded under Rule 403.

**C.     The Government Failed to Provide Specificity Required by the Court's Order.**

The government failed to offer any additional information regarding Detective Fries' testimony following the Court's order issued on December 6, 2022. (Dkt # 352). All the information that the government has proffered shows that Detective Fries' testimony is inadmissible.

    1.     <u>Use of massage parlors as fronts for Sex Trafficking</u>

According to Detective Fries, massage parlors are frequently used for sex trafficking and prostitution but he fails to offer any distinction between the two, much less a reliable distinction. There is no dispute that sex work was occurring at the massage parlor, so testimony that fails to reliably distinguish between prostitution and sex trafficking will serve to confuse the jury and waste time. Extant research suggests that law enforcement officers often conflate sex trafficking with prostitution and Detective Fries' disclosure suggests that he is no exception.  He has demonstrated no specialized skill and appears to have relatively little training and no formal education on trafficking, much less on trafficking or prostitution in the erotic massage industry.

Perhaps as a consequence, his proposed testimony erroneously suggests that prostitution and sex trafficking are one in the same.

    2.    <u>Methods used by sex traffickers that use massage parlors as the cover for sex trafficking activity.</u>

First and foremost, Detective Fries' proposed testimony fails to distinguish between methods used by sex traffickers and methods used by consenting sex workers in the massage parlor industry. Detective Fries' testimony regarding the use of massage parlors as a front for sex trafficking and labor trafficking and the use of fear and intimation is a blatant attempt to bolster the credibility of the witnesses. Moreover, he is not qualified by knowledge, skill, experience, training, or education. He has merely testified in one case (*United States v. Filberto Chavez*, EDCA CR 17-198 LJO-SKO). and has not yet prevailed beyond a *Daubert* challenge. Since Detective Fries has no scientific, technical, or other specialized knowledge, his experiential anecdotes and speculative opinions will not be of assistance to the trier of fact and instead may lead to an erroneous conflation of consensual sex work and sex trafficking. Detective Fries has not written any authoritative texts, has no formal education, and limited training. Lastly, Detective Fries' testimony is not based on sufficient facts or data, since he appears to rely solely on his limited experience as a law enforcement officer who conflates prostitution and trafficking. If not excluded, Detective Fries' testimony poses the risk of misinforming the trier of fact.

    3.    <u>Methods of recruitment and control by sex traffickers utilizing massage parlors as fronts.</u>

Detective Fries' claim that methods of recruitment by massage parlors includes trafficking victims from the same general geographic area from a foreign country who have limited English. He will further testify that the trafficker will use posts in foreign newspapers to recruit. Further, he will testify that a trafficker will commonly use threats and that he has *heard* that traffickers can force drugs on their victims. Again, Detective Fries has no specialized knowledge. Since many individuals from foreign

1 countries engage in voluntary sex work at massage parlors, Detective Fries would
2 conflate voluntary sex work with trafficking. His testimony is not based on sufficient
3 facts or data. Further his testimony will not be derived from reliable principles and
4 methods but only his law enforcement experience. Last, given the fact that Detective
5 Fries is not familiar with reliable principles and methods that are accepted in the field
6 of human trafficking, as opposed to consenting adult sex work, the is unable to reliably
7 apply principles and methods to the facts of the case.

        4.        <u>Advertisements for massage parlors, including commonly used terminology.</u>

10 The government has proffered that Detective Fries will testify that massage
11 parlors use the internet to attract customers and about the terminology used in online
12 advertisements. He will testify to websites used and explain that when the
13 advertisement says customers will leave "very happy" that is code for sex acts. (Exhibit
14 "A"). Detective Fries will not be telling the jury anything that the vast majority of
15 society already knows or is within the common sense of an ordinary person. Expert
16 testimony is unnecessary where the acts in question are within the common knowledge
17 or experience of lay persons. *See* Fed. R. Evid. 702 (authorizing expert testimony to
18 establish standard of care in cases involving scientific, technical or specialized
19 knowledge). Thus, only where the subject matter "is beyond the common knowledge of
20 the average lay person" is expert testimony proper. *United States v. Hanna*, 293 F.3d
21 1080, 1086 (9th Cir. 2002). Use of the internet to advertise sex acts is within the
22 common knowledge of the average layperson. Further, code words are also within
23 common knowledge. Phrases like "happy" or "happy endings," have been part of
24 popular culture in relation to massage parlors for decades, and, more importantly are
25 irrelevant because they are indistinguishable when used in prostitution and/or sex
26 trafficking. Further, Detective Fries will not testify based on reliable principles and
27 methods, only his experience as a law enforcement officer. A *Daubert* hearing will
28 reveal that Detective Fries is unfamiliar with the state of science research and cross

examination with pointed questions will most certainly elicit demonstrably erroneous responses. For instance, in the sole case where Detective Fries testified as an expert, he opined that "trap" referred to commercial sex, when it demonstrably has other meanings, such as "drugs" or "diligent work ethic." (*See* Exhibit "D," transcript p. 314-315).

### 5. Operation methods of massage parlors engaged in sex traffickers.

Finally, the government plans to elicit testimony from Detective Fries regarding how massage parlors that offer sexual services operate including the way the money works and locations of sexual services. Once again, there is no showing on what method or specialized knowledge would be the basis of the testimony. Because the government has not offered an adequate basis for Detective Fries' understanding other than his anecdotal experience, the Court should exclude it especially since empirical research on the anecdotal experience of law enforcement officers suggests that even with training, misidentification and conflation between prostitution and sex trafficking is rampant.

## D. If Detective Fries' Testimony is Not Excluded, an Evidentiary Hearing is Necessary in this Case.

If the Court is inclined to find that expert testimony of Detective Fries is relevant, it must hold a *Daubert* hearing to assess the reliability of such testimony before admitting it. The defense is confident that a hearing will clearly demonstrate the unreliable and erroneous nature of Detective Fries' opinions. Rule 702 requires a court to determine that expert testimony "is based on sufficient facts or data," the testimony is "the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In addition, the Court does "not have discretion to abandon th[is] gatekeeping function altogether." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019). A "district court abuses its discretion when it . . . fail[s] to assess the scientific validity or methodology of an expert's proposed testimony." *Id.* at 1189. Here, the government

has offered no evidence that Detective Fries' testimony will be based off of any measure of reliability, but instead suggests that his anecdotal experience should suffice. While Detective Fries may have general experience investigating *street* prostitution and the licensing of massage parlors, Detective Fries lacks previous experience with the exact terms at issue here. His "qualifications, including his experience" with similar investigations "are relevant but not alone sufficient to satisfy Federal Rule of Evidence 702." *United States v. Vera,* 770 F.3d 1232, 1241 (9th Cir. 2014).

The Court would have to inquire into his knowledge to assure that it is both reliable and adequately explained, as well as clearly makes the distinction between consenting sex work and sex trafficking which is the central issue in the present case. The Court simply does not have sufficient information to assess the reliability of Detective Fries' testimony and must hold a *Daubert* hearing to fulfill its gatekeeping function.

### III.   CONCLUSION

The testimony of Detective Fries should be excluded because it is not a reliable; he does not have sufficient knowledge, skill, or experience.  As such, his opinion will not assist the trier of fact.  The government has not carried its burden to demonstrate that the testimony is reliable because whatever methods he has used have not been tested, peer-reviewed, or accepted in the community.  Since his opinion is not the product of reliable principles and methods, Ms. Xing respectfully requests that his testimony be excluded.  At the very least, she requests that a *Daubert* hearing be held.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  December 16, 2022          By  /s/ Neha A. Christerna
                                      NEHA A. CHRISTERNA
                                      Counsel for Mei Xing