E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
DAMARIS DIAZ (Cal. Bar No. 277524)
SCOTT M. LARA (Cal. Bar No. 296944)
Assistant United States Attorney
Violent & Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0302/0427
    Facsimile: (213) 894-3713
    E-mail:    damaris.diaz@usdoj.gov
            scott.lara@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR. No. 20-228(A)-FMO |
|---|---|
|        Plaintiff, | GOVERNMENT'S REVISED TRIAL MEMORANDUM |
|          v. | Trial Date: February 21, 2023 |
| MEI XING, | Place:     Courtroom of the Hon. Fernando M. Olguin |
|        Defendant. | |

    Plaintiff United States of America, by and through its attorneys of record, Assistant United States Attorneys Damaris Diaz and Scott M. Lara, hereby file its Revised Trial Memorandum.

//

//

1

The government respectfully requests permission to file additional trial memoranda if necessary.

Dated: February 15, 2023     Respectfully submitted,

                             E. MARTIN ESTRADA
                             United States Attorney

                             MACK E. JENKINS
                             Assistant United States Attorney
                             Chief, Criminal Division


                             _/s/_____
                             DAMARIS DIAZ
                             SCOTT M. LARA
                             Assistant United States Attorney

                             Attorneys for Plaintiff
                             UNITED STATES OF AMERICA

**GOVERNMENT'S TRIAL MEMORANDUM**

I.   **STATUS OF THE CASE**

   A.   **Jury Trial Is Set to Begin on February 21, 2023**

   A jury trial against defendant Mei Xing ("defendant") is scheduled for February 21, 2023.  The government estimates that its case-in-chief will last approximately six to seven days.  The government expects to call approximately 10 witnesses in its case-in-chief.  Neither party has waived the right to trial by jury.  A Mandarin Chinese language interpreter is needed for defendant.  The five victim witnesses all speak Mandarin as well -- the government is providing an interpreter for these witnesses.  Defense is responsible for providing an interpreter for any defense witness, if necessary.  Defendant is in custody.

   B.   **The Indictment**

   Defendant is charged with five counts of sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a) related to five victims identified in the First Superseding Indictment.

II.   **ELEMENTS OF THE OFFENSES**

   A.   **Sex Trafficking in violation of 18 U.S.C. § 1591(a)**

   The elements of sex trafficking by force, fraud, and coercion, in violation of 18 U.S.C. § 1591(a)(1), (a)(2), as charged in Counts 1 through 5, are as follows:  (1) The defendant knowingly: recruited, enticed, harbored, transported, provided, obtained, or maintained by any means the victim, or benefitted financially, or received anything of value, from participating in a venture which recruited, enticed, harbored, transported, provided, obtained, or maintained by any means the victim; (2) the defendant did so knowing that: means of force, threats of force, fraud, coercion, or any combination of such means,

would be used to cause the victim to engage in a commercial sex act; and (3) the recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining was in or affecting interstate commerce. Importantly the government charged this as five discrete counts of sex trafficking (1 specific victim per count), not conspiracy to commit sex trafficking of multiple victims.

## III. STATEMENT OF FACTS

This case centers on defendant's trafficking of five victims, Victims 2, 3, 4, 5, and 6, for the purpose of commercial sex.  The government expects to prove the following, among other things:

### A.   Victims 2, 3, 4, 5, and 6

From about July 2016 to October 2018, defendant recruited five victims (the "Victims"), all recent immigrants from China, to work at defendant's massage parlor.  At the time they were hired, some of the Victims knew they would be expected to perform commercial sex work, after arriving at the massage parlor others observed that some women may have been performing commercial sex work but thought it would be their option to refuse, or agree to some sex acts, and refuse others.

However, even with knowledge that commercial sex work occurred, the Victims believed they would have some control over what they would be doing with their own bodies while working for defendant.

The Victims will testify that defendant engaged in fraud, threats of force, and coercion to have the Victims engage in sex with abusive customers, engage in unprotected sex, and perform sex acts they objected to.  Many of the Victims will also testify that defendant arranged for commercial sex acts without their knowledge which caused them to be forced by customers.  If the Victims protested or resisted, defendant threatened to inform on the Victims

to their families or report their commercial sex activities to the
police or immigration authorities, or to criminals in the United
States or China.  Defendant created an atmosphere of coercion by
consistently telling the Victims that she had relationships with the
police, and that they would only be safe at her massage parlors.
Defendant even told some of the Victims that she could "buy a life"
for $2,000.

**B.  Law Enforcement Witnesses**

The government also intends to call at least five law
enforcement witnesses.  Fresno Police Department Corporal David Fries
will testify as a Human Trafficking Expert as discussed in the
Government's Opposition to Defendant's Motion _in Limine_ Preclude the
Government's Trafficking Expert.  (Dkts. 129; 353.)  LASD Detective
Stewart will testify about the investigation, an undercover call to
defendant, defendant's post-arrest interviews, and the search of
defendant's residence at 305 W. Newby Avenue in San Gabriel, and will
lay foundation for the bulk of the evidence.  LASD Detective Parga
will testify about the search of defendant's massage parlor at 2821
Peck Road, Unit E, El Monte.  LASD Detective Duff will testify about
the search of defendant's massage parlor at 9611 Garvey Avenue, Unit
201A, South El Monte.  FBI Special Agent Stanley Patrzalek will
testify about the subsequent FBI investigation, including
advertisements discovered on the internet, financial information,
corroborating the victims, and evidence seized from defendant's
digital device(s).

**C.  Pretrial Motions Before Judge Wright**

On May 6, 2022, Judge Wright held a pretrial conference at which
he heard argument and issued rulings on motions _in limine_.  That same

day, the Court issued a Minute Order (Dkt. 159) ruling on the following motions as follows:

(1)   denied defendant's Motion <u>in Limine</u> to Suppress post-arrest statements (Dkt. 92, 159) (not renewed);

(2)   denied defendant's Motion <u>in Limine</u> to Preclude Use of the Term "Victim" (Dkt. 93, 159) (renewed orally and granted by this Court);

(3)   denied defendant's Motion <u>in Limine</u> to Preclude the government's Trafficking Expert (Dkt. 94, 159) (renewed and pending before this Court);

(4)   granted the government's Motion <u>in Limine</u> Number 1 to Exclude Rule 412 Evidence (Dkt. 98, 159) (matter addressed by this Court at Dkt. 366);

(5)   granted the government's Motion <u>in Limine</u> Number 3 to Exclude Surreptitious Recordings (Dkt. 104, 159) (not renewed);

(6)   granted the government's Motion <u>in Limine</u> Number 4 to Exclude Evidence from Victims' Historical Immigration Records (Dkt. 107, 159) (not renewed);

(7)   denied defendant's Rule 412 motion (Dkt. 155) (denied again by this Court at Dkt. 366);

(8)   granted the Government's Application to Exclude Defendant's Immigration Expert (renewed and pending with this Court at Dkt. 166, 171.)

On May 10, 2022, the parties filed Proposed Jury Instructions, Joint Proposed Jury Verdict Form, and a Proposed Statement of the Case.  (Dkt. 176).  On May 10, 2022, the government filed Disputed Proposed Jury Instructions.  (Dkt. 177.)  On May 11, 2022, defense filed Disputed Proposed Jury Instructions.  (Dkt. 181.)

#### D.    **Settled Motions _in Limine_**

This Court has made several rulings on certain oral and written motions to date, as noted above.  The following Court orders are in effect:

(1)    Defendant is precluded from inquiring into testifying witnesses' sexual history pursuant to Rule 412.  (Dkt. 366);

(2)    Defendant's Post-Miranda statements are not suppressed. (Dkt. 92, 159);

(3)    Surreptitious Recordings of the Victims are excluded. (Dkt. 104, 159);

(4)    Evidence from the Victims' Historical Immigration Records is excluded.[1]  (Dkt. 107, 159);

(5)    The government must produce testifying witnesses' immigration records (and has done so).[2]  (Dkt. 272, 311);

---

[1] This Motion was granted to exclude "all statements made within [the historical immigration] documents," and "evidence and questioning related to the Historical Immigration Records and all statements made within . . . ."  (Dkt. 107 at 1; 150 at 8; 159.)

[2] Defense's motion only requested "Ms. Xing respectfully requests that the Court issue an order directing the government to produce the [historical immigration] applications pursuant to a protective order," so she could use "aliases" among other things in cross examination.  (Dkt. 272 at 1, 7.)

Defendant did not ask to modify, nor did the Court vacate, the prior order excluding the historical immigration records, or any questioning related to these records from evidence.  (See Dkt. 107, 159, 272.)  Defendant's entire motion was based on the rules of discovery, not the rules of evidence.  (See Dkt. 272.)  Further, as even defendant's own motion acknowledged discovery is a different standard than admissibility.  "[T]he test is not whether the discovery is admissible at trial, but whether the discovery may assist [the accused] in formulating a defense, including leading to admissible evidence." (Dkt. 272 at 4, quoting US v. Soto-Zuniga, 837 F.3d 992, 1003 (9th Cir. 2016).)

Thus, defendant is still barred from introducing these documents and all statements pursuant to the Order granting the government's otion in Limine #4.  (See Dkt. 107, 159.)  That Order was not vacated or reversed by this later discovery motion.

1   (6)   The government must produce digital data (and has done so).

2   (Dkt. 270, 311.);

3   (7)   Prosecutors shall refer to victims as "alleged victims" or

4   some other term until closing arguments.  (Oral order.)

5   **E.   Pretrial Motions Pending Before This Court**

6   After this case was transferred to this Court following Judge

7   Wright's recusal, counsel filed Motions <u>in Limine</u> that remain

8   pending, and the Court issued new dates for expert witness

9   disclosures and motions following the amendment to Rule 16.  The

10   following motions remain pending as of this filing:

11   (1)   Defendant's Motions to Preclude Evidence of Defendant's

12   Witness Tampering and Use of a Purported Cop to Coerce Victims into

13   Sex Work.[3]  (<u>See</u> Dkt. 315);

14   (2)   Defendant's Motion to Admit Complete Pretext Call.  (Dkt.

15   277, 284, 297);

16   (3)   Defendant's Motion to Preclude Government's Human

17   Trafficking Expert.  (Dkt. 355, 357, 362);

18   (4)   Government's Motion to Preclude Defense's Human Trafficking

19   Expert.  (Dkt. 354, 358, 361);

20   (5)   Government's Motion to Preclude Defendant's Immigration

21   Expert.  (Dkt. 353, 359, 360).

22   **F.   Jury Instructions**

23   In preparation for trial in this Court, the government filed

24   Proposed Jury Instructions (Clean and Annotated Disputed sets) on

25   September 26, 2022.  (Dkt. 266, 267.)

26

27         [3] Judge Wright denied these motions on the record.  (<u>See</u> Dkt.
    210 at 2.)  Later, this Court set a date for defendant to <u>file</u>
28   optional replies to these motions, then ordered the parties to meet
    and confer and file a joint brief.  (<u>See</u> Dkt. 264, 311.)

### G.   Exhibit Stipulation Pending

In preparation for trial in this Court, the parties filed a first Pretrial Exhibit Stipulation on September 26, 2022, which this Court struck and instructed the parties to continue meeting and conferring.  (Dkt. 271.)  On October 21, 2022, the parties filed a second Pretrial Exhibit Stipulation.  (Dkt. 316.)

### H.   Other Pretrial Filings

The parties previously filed a Joint Proposed Statement of the Case (Dkt. 172) and Joint Proposed Verdict Form (Dkt. 173).  The government filed Proposed Voir Dire Questions (Dkt. 175), as did defendant (Dkt. 179).

## IV.  EVIDENTIARY AND LEGAL ISSUES

### A.   Sex Trafficking Adults Using Force, or Fraud, or Coercion is Illegal per 18 U.S.C. § 1591(a) and Ninth Circuit Law

At a hearing in October 2022, defense counsel indicate they would file a motion to dismiss challenging the applicability of 18 U.S.C. § 1591(a) to adult victims.  Defense counsel never filed such a motion.  Such a claim would not be supported by the plain language of the statute, and caselaw in this and every circuit in the country.

18 U.S.C. § 1591(a) is titled "sex trafficking of children **or** by force fraud or coercion" and criminalizes the sex trafficking of two categories of victims: (1) those under the age of 18, and (2) those who are "cause[d] . . . to engage in commercial sex acts" by "means of force, threats of force, fraud, coercion . . . or any combination of such means."  See 18 U.S.C. § 1591(a) (emphasis added); see also Ninth Cir. Model Criminal Jury Instruction No. 20.25 (rev. June 2022).  Thus, the statute applies to those who engage in sex trafficking of either minors or adults.  Id.

Every circuit in the country, including the Ninth Circuit, has adopted this interpretation.  The Ninth Circuit has repeatedly upheld convictions for sex trafficking of adults under 18 U.S.C. § 1591(a), or otherwise affirmed the applicability of the statute to adult victims:

- United States v. Ford, 821 F. App'x 742 (9th Cir. 2020), cert. denied, 141 S. Ct. 2712 (2021) (affirming conviction for sex trafficking of an adult).

- United States v. Taylor, 828 F. App'x 491, 492 (9th Cir. 2020) (affirming convictions for sex trafficking of adults; reversing convictions for sex trafficking of minors).

- United States v. Jackson, 806 F. App'x 533, 534 (9th Cir. 2020), cert. denied, 141 S. Ct. 832 (2020) (affirming conviction for sex trafficking of an adult).

- United States v. Delay, 788 F. App'x 551, 552 (9th Cir. 2019) (affirming convictions for sex trafficking of minors and adults).

- United States v. Love, 743 F. App'x 138 (9th Cir. 2018) (affirming convictions for sex trafficking of minors and adults).

- United States v. Mickey, 897 F.3d 1173, 1184 (9th Cir. 2018) (affirming conviction for sex trafficking of three adult victims).

- United States v. Bazar, 747 F. App'x 454 (9th Cir. 2018) (affirming conviction for sex trafficking of two adult women arising from massage business in which defendant required victims to perform happy-ending massages).

- <u>United States v. Chang Ru Meng Backman</u>, 817 F.3d 662, 664 (9th Cir. 2016) (affirming conviction for "forcing into prostitution a Chinese woman").

- <u>United States v. Valenzuela</u>, 495 F. App'x 817, 819 (9th Cir. 2012) (affirming trial court's post-conviction orders after convictions for sex trafficking of minors and adults in a case that is currently before this Court for post-appeal proceedings, 07-CR-11-FMO).

- <u>United States v. Webster</u>, No. 08-30311, 2011 WL 8478276, at *2 (9th Cir. Nov. 28, 2011) (affirming conviction for sex trafficking of minors and adults).

- <u>United States v. Todd</u>, 627 F.3d 329, 330-31 (9th Cir. 2010) ("Subtitled 'Sex trafficking of children or by force, fraud, or coercion,' the law strikes at two particularly vicious permutations of commercialized sex: at the exploitation of minors in the business of selling sex **and** at the use of criminal means to produce the product being sold. This case falls into the second slot.") (emphasis added).

- <u>United States v. Gallenardo</u>, 579 F.3d 1076, 1084 (9th Cir. 2009) ("Despite the first part of its title, § 1591 may involve non-minor victims.").

- <u>United States v. Chang Da Liu</u>, 538 F.3d 1078, 1082 (9th Cir. 2008) (affirming conviction for sex trafficking of six adult victims).

The Supreme Court has noted that "18 U.S.C. § 1591(a)(1)" "criminalizes sex trafficking of children, **or of adults** by force,

fraud, or coercion." <u>Torres v. Lynch</u>, 578 U.S. 452, 462 n.6 (2016) (emphasis added).

<u>United States v. Brooks</u>, 610 F.3d 1186 (9th Cir. 2010), does not support the theory that the statute only applies to children.  In <u>Brooks</u>, the court found that, in a case alleging sex trafficking of children, defendant must know the victim was under the age of 18 years old.  However, <u>Brooks</u> does not address the force, fraud, or coercion prong of proving a violation of the statute.

**B.   Translations**

Many documents and recordings that the government seeks to admit at trial are in the Chinese/Mandarin language and have been translated by certified Mandarin translators.  The parties have stipulated to the accuracy of much of the written translations in the government's evidence.  (Dkt. 197.)

The Court indicated that recorded oral statements (such as recorded calls and defendant's interviews) must be translated and/or transcribed by Court or FBI certified translators.  The government has obtained and produced to the defense FBI certified translations for all audio/video recordings that it intends to introduce in its case in chief.

Defense counsel has not provided all of the translations they have commissioned, despite multiple requests from the government. The Court denied defendant's request to require the government to translate additional recordings.  (Dkt. 356.)

**C.   Authentication and Identification/Chain of Custody**

The government will seek to introduce physical evidence recovered from defendant's home, car, and businesses.  Federal Rule of Evidence 901(a) provides that "[t]o satisfy the requirement of

authenticating or identifying an item of evidence, the proponent must provide evidence sufficient to support a finding that the item is what the proponent claims it is." Accordingly, under Rule 901, issues of authenticity and identification are treated as "a special aspect of relevancy." Fed. R. Evid. 901(a) (Advisory Committee Notes).

Rule 901(a) only requires the government to make a prima facie showing of authenticity or identification "so that a reasonable juror could find in favor of authenticity or identification." United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991) (quoting United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989)). The authenticity of proposed exhibits may be proven by circumstantial evidence. See United States v. King, 472 F.2d 1, 9-11 (9th Cir. 1972). If the government makes a prima facie showing of authenticity, the Court should admit the evidence. See Chu Kong Yin, 935 F.2d at 996; United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985). The credibility or probative force of the evidence offered is ultimately an issue for the trier of fact. Chu Kong Yin, 935 F.2d at 996.

To be admitted into evidence, a physical exhibit must be in substantially the same condition as when the crime was committed. Fed. R. Evid. 901. The Court may admit the evidence if there is a "reasonable probability the article has not been changed in important respects." United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991) (quoting Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960)). This determination is to be made by the trial judge and will not be overturned except for clear abuse of discretion. Factors the Court may consider in making this determination include the

nature of the item, the circumstances surrounding its preservation, and the likelihood of intermeddlers having tampered with it. <u>Gallego</u>, 276 F.2d at 917.

In establishing chain of custody as to an item of physical evidence, the government is not required to call all persons who may have come into contact with the piece of evidence. <u>Harrington</u>, 923 F.2d at 1374. Moreover, a presumption of regularity exists in the handling of exhibits by public officials. <u>Id.</u> Therefore, to the extent that alleged or actual gaps in the chain of custody exist, such gaps go to the weight of the evidence rather than to its admissibility. <u>Id.</u>

<u>According to Federal Rule of Evidence 901(b) examples of evidence that satisfies the requirement includes: "(2) Nonexpert Opinion About Handwriting. A nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation."</u>

**D. Expert and Lay Opinion Testimony**

If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide testimony in the form of an opinion or otherwise. Fed. R. Evid. 702. The court has broad discretion to determine whether to admit expert testimony. <u>See, e.g.</u>, <u>United States v. Bonilla-Guizar</u>, 729 F.3d 1179, 1183 (9th Cir. 2013) (court's decision to admit expert testimony reviewed for abuse of discretion); <u>United States v. Patterson</u>, 819 F.2d 1495, 1507 (9th Cir. 1987) ("decision to admit expert testimony is committed to the discretion of the trial judge"). An expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon

are of the type reasonably relied upon by experts in the field.  Fed. R. Evid. 703.

The admission of expert testimony or lay witness opinion testimony is within the discretion of the trial judge and will not be disturbed unless "manifestly erroneous."  United States v. Fleishman, 684 F.2d 1329, 1335 (9th Cir. 1982); United States v. Skeet, 665 F.2d 983, 985-86 (9th Cir. 1982).  An expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied on are of the type reasonably relied on by experts in the field.  Fed. R. Evid. 703.

The government has given notice of one expert witness: Fresno Police Department Corporal David Fries.  As set forth in the government's expert notice and summarized in the government's opposition to the defendant's Motion in Limine to Exclude Expert Testimony, Corporal Fries will provide expert testimony regarding massage parlor commercial sex trafficking operations, which assist the jury in understanding the dynamics of such operations.

**E.   Hearsay, Non-Hearsay, and Hearsay Exceptions**

Federal Rule of Evidence 801(c) defines "hearsay" as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  While hearsay is not admissible, the government will seek to introduce evidence that falls within non-hearsay and exceptions to the hearsay rules, some of which are described below.

1.   Defendant's Statements Are Admission by a Party Opponent and Not Hearsay when Offered by the Government

A defendant's statement is admissible only if offered against her by the government.  See Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).  A defendant's statement is not hearsay if the defendant "manifested an adoption or belief in its truth . . . ."  Fed. R. Evid. 801(d)(2)(B).

A defendant, on the other hand, cannot elicit her own prior statements, either on direct examination of her own witness, or cross-examination of the government's witness, because those statements are inadmissible hearsay.  See United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000).  Indeed, even where the government elicits the inculpatory portion of a defendant's statement from a witness, on cross-examination, the defendant is not entitled to elicit any exculpatory portion.  See id. at 682.  Moreover, a defendant cannot rely upon Rule 801(d)(1)(B), as an alternative basis for the admissibility of such testimony.  A prior consistent statement is not admissible if it is introduced in the absence of impeachment.  See United States v. Navarro-Varelas, 541 F.2d 1331, 1334 (9th Cir. 1976).

Statements not offered for their truth, but to provide context for what the defendant has said, such as the statements of persons in a conversation with the defendant, are not hearsay.  United States v. Smith, 918 F.2d 1551, 1559 (11th Cir. 1990); United States v. McDowell, 918 F.2d 1004, 1007-08 (1st Cir. 1990).

At trial, the government intends to introduce excerpts of defendant's post-arrest interviews with law enforcement.  The statements of defendant in these recordings are admissions by a party

14

opponent.  The questions posed by law enforcement are not statements

offered for the truth, but rather to provide clarity about

defendant's response.

### 2. Co-conspirator's Statements are Not Hearsay

Statements by one conspirator during the course of and in

furtherance of the conspiracy may be used against another conspirator

because such statements are not hearsay.  Fed. R. Evid. 801(d)(2)(E).

The government intends to introduce these statements for their truth

under Rule 801(d)(2)(E).  In particular, here, the government will

introduce through Victim testimony co-conspirator statements from

"Johns" (i.e. commercial sex customers) regarding the arrangements

made with defendant for sex with the Victims.  The government will

also introduce through Victim testimony co-conspirator statements

from senior commercial sex workers under defendant who would spread

rumors of her connections with law enforcement, gangs, and her

reputation and abilities.  The law "favor[s] admission in conspiracy

situations." United States v. Lindemann, 85 F.3d 1232, 1238 (7th

Cir. 1996).  There is independent evidence of the conspiracy,

including Victim testimony regarding co-conspirator conduct.  See

United States v. Castaneda, 16 F.3d 1504, 1507 (9th Cir. 1994)

("cannot rely solely on the coconspirator statements themselves").

Co-conspirator statements are admissible "notwithstanding the fact

that the indictment does not contain a conspiracy count." United

States v. Manning, 56 F.3d 1188, 1197 (9th Cir. 1995) (quotations

omitted).  Co-conspirator statements are non-testimonial, fall within

a "firmly rooted hearsay exception," and do not violate the

Confrontation Clause.  United States v. Larson, 460 F.3d 1200, 1213

(9th Cir. 2006) (citing Crawford v. Washington, 541 U.S. 36, 56

1  (2004); Ohio v. Roberts, 448 U.S. 56, 66 (1980); Bourjaily, 483 U.S.

2  at 183-184; and United States v. Hagege, 437 F.3d 943, 958 (9th Cir.

3  2006)).

4       Additionally, certain co-conspirator statements are not being

5  admitted for their truth, but rather for their effect on the

6  listener—the Victims.  See Fed. R. Evid. 801(c).  For example,

7  statements regarding defendant's ties to organized crime or to law

8  enforcement.

9            3.   Statement by Defendant's Employees Are Not Hearsay

10      Statements made by defendant's "employee on a matter within the

11 scope of that relationship and while it existed" is an admission by a

12 party opponent when offered by the government.  FRE 801(d)(2)(D).

13      Writings found at the 9611 Garvey Avenue, Unit 201A massage

14 parlor created by defendant's employees are admissible as non-

15 hearsay.  Based on witness testimony and a written contract,

16 defendant was an owner of the massage parlor.  The writings found

17 included roster sheets indicating who was working and how many

18 customers they had serviced that day.  These were found at the

19 massage parlor itself in the employee area.  These writings were made

20 "within the scope of that [employee] relationship" because they were

21 made to facilitate the equitable running of the business between

22 employees.  Thus, these writings are not hearsay, but instead

23 statements by a party opponent as an employee on a matter within the

24 scope of that relationship.

25      Similarly, statements by any of defendant's employees on a

26 matter within the scope of that relationship are admissions by a

27 party opponent when offered by the government.  FRE 801(d)(2)(D).

28

16

1           4.  Prior Consistent Statements

2       Should the defendant attack the credibility of a testifying

3  witness, the government may seek to introduce other prior consistent

4  statements under Rule 801(d)(1)(B) of the Federal Rules of Evidence.

5  "The district court has broad discretion in determining the

6  admissibility of a prior consistent statement under Fed. R. Evid.

7  801(d)(1)(B)."  United States v. Belfast, 611 F.3d 783, 816 (11th

8  Cir. 2010) (internal quotations omitted).

9       Prior consistent statements are admissible to rebut a charge of

10  recent fabrication or improper influence or motive.  Fed. R. Evid.

11  801(d)(1)(B); United States v. Stuart, 718 F.2d 931, 934 (9th Cir.

12  1983).  Rule 801(d)(1)(B) of the Federal Rules of Evidence provides

13  that:  "A statement is not hearsay if -- . . . the declarant

14  testifies at the trial or hearing and is subject to cross-examination

15  concerning the statement, and the statement is consistent with the

16  declarant's testimony and is offered: (i) to rebut an express or

17  implied charge against the declarant of recent fabrication or

18  improper influence or motive; or (ii) to rehabilitate the declarant's

19  credibility as a witness when attacked on another ground."

20       If the defense makes an express or implied charge of recent

21  fabrication or improper influence or motive of the declarant's

22  testimony-—e.g., testimony in exchange for immigration benefits, or a

23  new life in the United States-—the witness' prior consistent

24  statements are admissible under Rule 801(d)(1)(B)(i) as long as they

25  pre-date the supposed motive to fabricate the statements.  See United

26  States v. Chang Da Liu, 538 F.3d 1078, 1086 (9th Cir. 2008)

27  (rejecting defendant's claim that victims fabricated their testimony

28  in order to receive financial assistance because victims' in-court

17

statements were largely consistent with statements made before the FBI began providing them with financial assistance); Arizona v. Johnson, 351 F.3d 988, 999 (9th Cir. 2003) (admitting victim's prior statement in a prosecution for sexual assault and kidnapping where defendant claimed that victim, a citizen of El Salvador who entered the United States illegally, fabricated her story because she wanted to stay in the United States for the duration of the investigation and trial).

Alternatively, should the defense attack a victim's credibility on "another ground," such as "inconsistency or faulty memory" the prior consistent statements would be admissible under Rule 801(d)(1)(B)(ii). Fed. R. Evid. 801(d)(1)(B)(ii) & advisory committee's note to 2014 amendment. If the defense does so that victim's prior consistent statements will be admissible under subsection (ii) not only to rehabilitate the victim's credibility, but also as substantive evidence against defendant. See Fed. R. Evid. 801, advisory committee's note to 2014 amendment; see also, e.g., United States v. Purcell, 967 F.3d 159, 197 (2d Cir. 2020) (under amendment, victim's prior statements admitted through investigating officer were not hearsay where her credibility was attacked); United States v. Flores, 945 F.3d 687, 705 (2d Cir. 2019) (prior statements admissible based on defendant's attack in opening statement); United States v. J.A.S., Jr., 862 F.3d 543, 545 (6th Cir. 2017) (victim's video interview was properly admitted where defendant impeached the victim on collateral grounds); cf. United States v. Portillo, 969 F.3d 144, 174 (5th Cir. 2020) (distinguishing between "claim that [witnesses] fabricated their stories" and claims based on any other ground); United States v. Magnan, 756 F. App'x 807, 818

1 (10th Cir. 2018) (same).

2     The government anticipates that it may seek to rehabilitate

3 certain witnesses with prior consistent statements.  For example, if

4 the defense attacks the credibility of a victim on cross examination,

5 which is likely, the rule permits the government to admit consistent

6 portions of victims' prior interviews with law enforcement that tend

7 to rehabilitate the victims' credibility.

8         5.   Present Sense Impression and Excited Utterance

9     Fed. R. Evid. 803(1) provides an exception to the hearsay rule

10 for statements "describing or explaining an event or condition, made

11 while or immediately after the declarant perceived it."  Also, Fed.

12 R. Evid. 803(2), "[a] statement relating to a startling event or

13 condition made while the declarant was under the stress of excitement

14 caused by the event or condition" is admissible evidence.  The Ninth

15 Circuit has two requirements for a statement to qualify as an excited

16 utterance: (1) there must be an exciting or startling event, and (2)

17 the statement must be made while the declarant is still under the

18 stress of excitement caused by the event.  United States v. McLellan,

19 563 F.2d 943, 948 (9th Cir.1977), cert. denied, 435 U.S. 969 (1978).

20 In order to admit evidence under a hearsay exception, the district

21 court must find by a preponderance of evidence that the foundation

22 requirements are satisfied.  McLellan, 563 F.2d at 948.

23     The government may seek to elicit testimony from witnesses that

24 fall within either one of these two rules.

25         6.   Victims' out of Court Statements are Hearsay

26     A Victim is not a "party" in a criminal prosecution, therefore

27 their statements cannot be "party opponent" statements.  United

28 States v. Kovall, 857 F.3d 1060, 1066 (9th Cir. 2017) (citing United

1  States v. Brown, 744 F.2d 905, 910 (2d Cir. 1984).  Witnesses who are

2  not party opponents (i.e., not the defendant) cannot be subject to

3  the "party opponent" exception to hearsay in Rule 801(d)(2)(A).

4  United States v. McCrady, 774 F.2d 868, 873 (8th Cir. 1985).

5              7.    Statements Not Offered for their Truth

6       Statements not offered for their truth, but offered for another

7  purpose, are not hearsay and therefore not inadmissible under Rule

8  802.  A statement offered only "to show the effect on the listener"

9  or a basis for the listener's subsequent actions, such as whether a

10  particular statement caused the listener to feel fear, rather than to

11  prove its truth may be "properly considered as non-hearsay."  See

12  United States v. Payne, 944 F.2d 1458, 1472 (9th Cir. 1991).

13  Admission of such non-hearsay statements do not create Confrontation

14  Clause issues.  See Davis v. Washington, 547 U.S. 813, 824, 126 S.

15  Ct. 2266, 2274, 165 L. Ed. 2d 224 (2006).

16  **F.    Rule 412**

17       As stated above, this Court has ruled that defendant may not

18  bring up or question the Victims regarding their sexual history in

19  accordance with Rule 412 and Rule 403.

20       Defendant should not be allowed to circumvent this ruling by

21  using information from victims' T-Visa applications regarding prior

22  sexual evidence or prior statements regarding the same to impeach

23  their character for truthfulness.  This evidence is properly barred

24  by Rule 412.  In an almost identical circumstance, the court in

25  Valenzuela rejected the argument that such evidence should be

26  admitted.  United States v. Valenzuela, No. CR 07-00011 (A)-MMM, 2008

27  WL 2824958, at *3 (C.D. Cal. July 21, 2008); see United States v.

28  Davis, No. CR 13-589-CAS, 2015 WL 519455, at *4 (C.D. Cal. Feb. 5,

2015) ("impeaching a witness's character for truthfulness is not a recognized exception to Rule 412's general prohibition of evidence of sexual history") (citing United States v. Tail, 459 F.3d 854, 859 (8th Cir. 2006). The Ninth Circuit agreed, upholding the exclusion of evidence of a prior misstatement related to sexual history in a subsequent trial. Hughes v. Raines, 641 F.2d 790, 793 (9th Cir. 1981).

Further, defendant may not admit extrinsic evidence to impeach testimony invited by questions posed during cross-examination. United States v. Castillo, 181 F.3d 1129, 1133 (9th Cir. 1999). Finally, defendant may not offer extrinsic evidence to prove another bad act to impeach the veracity of the victim's statements, unless it is a conviction. See United States v. Jackson, 882 F.2d 114, 1448 (9th Cir. 1989).

### G. Scope of Cross Examination

Cross examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of its discretion, permit inquiry into additional matters as if on direct examination. Fed. R. Evid. 611(b). Additionally, under Federal Rule of Evidence 611(a), "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."

The government anticipates that defendant will seek to cross-examine the Victims regarding their T-Visa applications, where applicable, to establish potential bias and to impeach them with

alleged inconsistent statements.  To the extent defendant attempts to introduce testimony or evidence regarding immigration matters outside of the T-Visa applications, the government will object on the basis of the Court's pre-trial rulings excluding these matters.

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony.  The scope of defendant's waiver is co-extensive with the scope of relevant cross-examination.  United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985).

### H.   Impeachment by Extrinsic Evidence and Prior Inconsistent Statements

Rules 607 and 608(b) do not permit the defendant to offer extrinsic evidence on a collateral issue -- i.e., only to contradict the witness.  Rule 607 permits a party to introduce extrinsic evidence to contradict a witness' statement on direct testimony.  Fed. R. Evid. 607; United States v. Castillo, 181 F.3d 1129, 1132 (9th Cir. 1999).  The rule permitting contradiction by impeachment, however, is not without limits, the most basic being that a party may not use the rule to contradict a witness if the issue is "collateral" to genuine issues in the case -- i.e., that the only purpose for the evidence is to contradict the witness.  United States v. Schwyhart, 123 Fed. Appx. 62, 66 (3rd Cir. 2005)(unpub.)("We have recognized the doctrine of impeachment by contradiction, but it is limited by the collateral issue rule, which provides that evidence is inadmissible if it is offered solely for the purpose of contradiction and no other; that is, 'one may not contradict for the sake of

contradiction; the evidence must have an independent purpose and an independent ground for admission.'" (quoting United States v. Payne, 102 F.3d 289, 294 (7th Cir. 1996)).

Similarly, Rule 608(b) provides that "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." Fed. R. Evid. 608(b); see United States v. Hinkson, 526 F.3d 1262, 1306 (9th Cir. 2008) ("Rule 608(b) bars introduction of extrinsic evidence of a witness' past conduct. On cross-examination, the witness may be impeached by referencing documents and probing the veracity of 'character for truthfulness or untruthfulness.' Nonetheless, Rule 608(b) 'limits the inquiry to cross-examination of the witness . . . and prohibits the cross-examiner from introducing extrinsic evidence of the witness' past conduct.'" (quoting United States v. Abel, 469 45, 55 (1984)).

Additionally, Federal Rule of Evidence 613(b) provides that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires. This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2)."

1   **I.   Duplicates**

2   "A duplicate is admissible to the same extent as an original

3   unless a genuine question is raised about the original's authenticity

4   or the circumstances make it unfair to admit the duplicate."  Fed. R.

5   Evid. 1003; United States v. Smith, 893 F.2d 1573, 1579 (9th Cir.

6   1990).  Here, many of the government's exhibits are duplicates of the

7   originals, created for ease of presentation to the jury.

8   **J.   Video and Audio Recordings**

9   The government will present recorded conversations in this case

10  in the form of recorded phone calls and recorded post-arrest

11  interviews of defendant.  One or more witnesses will provide the

12  foundation for the recordings the government selects to introduce at

13  trial and identify the voices of the persons speaking in the

14  recordings.  The foundation that must be laid for the introduction

15  into evidence of recorded conversations is a matter largely within

16  the discretion of the trial court.  There is no rigid set of

17  foundational requirements.  Rather, the Ninth Circuit has held that

18  recordings:

19      [A]re sufficiently authenticated under Federal Rule of
        Evidence 901(a) if sufficient proof has been introduced so
20      that a reasonable juror could find in favor of authenticity
        or identification.  This is done by proving a connection
21      between the evidence and the party against whom the evidence
        is admitted, and can be done by both direct and
22      circumstantial evidence.

23  United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995),

24  modified, 98 F.3d 1100 (9th Cir. 1996)(internal citations and

25  quotations omitted).  Witnesses may testify competently as to the

26  identification of a voice on a recording.  A witness' opinion

27  testimony in this regard may be based upon his having heard the voice

28  on another occasion under circumstances connecting it with the

alleged speaker.  Fed. R. Evid. 901 (b) (5); <u>United States v. Torres</u>, 908 F.2d 1417, 1425 (9th Cir. 1990) (testimony of voice recognition constitutes sufficient authentication).  Circumstantial evidence may also be introduced to identify the speaker in an intercepted conversation.  Fed. R. Evid. 901(b)(5), (6).

All duly admitted recordings must be played in open court. Allowing jurors to take into the jury deliberation room recorded conversations that were not played in open court is structural error requiring automatic reversal if a defendant objects to allowing the jurors to have the unplayed calls in the jury room.  <u>United States v. Noushfar</u>, 78 F.3d 1442, 1444-46 (9th Cir. 1996), <u>as amended</u>, 140 F.3d 1244 (9th. Cir. 1998).

### K.    Transcripts of Recorded Conversations

For recorded conversations in the English language, the recording itself is the evidence and a transcript of the recording may be provided to the jury in open court as an aid in following the conversation.  <u>United States v. Chen</u>, 754 F.2d 817, 824 (9th Cir. 1985); <u>United States v. Phillips</u>, 577 F.2d 495, 501-02 (9th Cir. 1978).  However, the Ninth Circuit has recognized that when the transcript is a translation from a foreign language into English, the transcripts of the English translation are themselves the evidence rather than the recordings.  <u>United States v. Fuentes-Montijo</u>, 68 F.3d 352, 355 (9th Cir. 1995) ("[W]hen faced with a taped conversation in a language other than English and a disputed English translation transcript, the usual admonition that the tape is the evidence and the transcript only a guide is not only nonsensical, it has the potential for harm."); <u>United States v. Taghipour</u>, 964 F.2d 908, 910 (9th Cir. 1992) (affirming instruction to the jury that tape was the evidence for the portion of the conversation in English,

while the translated transcript was the evidence for the portion of the conversation in Farsi).

Here, the recorded conversations are in English and Mandarin. Witnesses will testify, or the parties will stipulate, as to the meaning of the statements in Mandarin.  Accordingly, the government has prepared transcripts of the Mandarin-only portions of the recordings.  The transcripts should be provided to the jury as a guide in open court, but should not be admitted into evidence and be allowed to go back with the jury during deliberations.

The "rule of completeness" set forth in Federal Rule of Evidence 106 is applicable where one party seeks to introduce a misleadingly tailored snippet of a statement that creates a misleading impression by being taken out of context.  It is entirely proper, however, to admit segments of a statement without including everything, and adverse parties are not entitled to offer additional statements just because they exist and the proponent has not offered them.  United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996).  Rule 106 does not render admissible evidence that is otherwise inadmissible under the hearsay rules.  Id.

**L.   Photographs**

The government intends to admit photographs of locations and evidence taken by law enforcement.

Photographs may be admitted as relevant evidence under Federal Rule of Evidence 401 if they illustrate a witness's testimony.  In such circumstances, the photograph is authenticated if the witness testifies that it is an accurate representation of facts of which the witness has personal knowledge, and "the witness who lays the authentication foundation need not be the photographer, nor need the

1    witness know anything of the time, conditions, or mechanisms of the

2    taking of the picture."  32 McCormick On Evid. § 215 (7th ed.); see

3    also Fed. R. Evid. 1002 Advisory Committee Note (2011).  Thus, for

4    example, it is suitable for a witness to identify a photograph by the

5    items or individuals depicted in it regardless of his knowledge of

6    the particular circumstances under which the photograph was taken.

7    "Under the Federal Rules, the witness identifying the item in a

8    photograph need only establish that the photograph is an accurate

9    portrayal of the item in question."  People of Territory of Guam v.

10   Ojeda, 758 F.2d 403, 408 (9th Cir. 1985).  Indeed, "[a] photograph

11   can be authenticated by someone other than the photographer if he

12   recognizes and identifies the object depicted and testifies that the

13   photograph fairly and correctly represents it."  See United States v.

14   Winters, 530 F. App'x 390, 395 (5th Cir. 2013) (citations and

15   quotations omitted).

16          **M.   Electronic Records**

17          Like other evidence, electronic data, including data seized from

18   digital devices, can be authenticated in a variety of ways, including

19   by a case agent with knowledge of the investigation.  See United

20   States v. Safavian, 435 F. Supp. 2d 36, 40 (D.D.C. 2006) (quoting

21   Fed. R. Evid. 901(b)(4) (contents of email messages authenticated by

22   its "[a]ppearance, contents, substance, internal patterns, or other

23   distinctive characteristics, taken in conjunction with

24   circumstances"); United States v. Smith, 918 F.2d 1501, 1510 (11th

25   Cir. 1990) ("The government may authenticate a document solely

26   through the use of circumstantial evidence, including the document's

27   own distinctive characteristics and the circumstances surrounding its

28   discovery"); United States v. Siddiqui, 235 F.3d 1318, 1322-23 (11th

Cir. 2000) (emails sufficiently authenticated by content and context by examining what was said in the messages as well as nicknames used within the messages).

### N.   Use of Exhibits During Opening Statement

Exhibits may be used by the government in the opening statement, and so long as the opening statement "avoids references to matters that cannot be proved or would be inadmissible, there can be no error, much less prejudicial error." United States v. De Peri, 77826 F.2d 963, 979 (3d Cir. 1985); see also United States v. Rubino, 43127 F.2d 284, 290 (6th Cir. 1970).

In particular, the government currently believes it will likely use photographs from the searches of defendant's residence and businesses, as well as scanned documents and records.  The government intends to identify the photographs and other evidence that it will use in its opening, to the defense.

## V.   DEFENSES

### A.   Evidence Related to Defenses

Defendant has not given notice of any defenses, nor has defendant produced any reciprocal discovery (except for the recordings at issue in the government's Motion in Limine Number 3 (Dkt. 104)), despite the government's requests.  Accordingly, to the extent that there exists reciprocal discovery to which the government is entitled under Federal Rules of Criminal Procedure 12.1, 12.2, 16(b), or 26.2 that defendant has not produced, the government reserves the right to seek to have such materials excluded at trial. See United States v. Young, 248 F.3d 260, 269-70 (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape evidence defendant did not produce in pretrial discovery where defendant sought to

introduce audiotape on cross-examination of government witness not
for impeachment purposes, but as substantive "evidence in chief" that
someone else committed the crime).

**B.    Cross-Examination of Defendant**

A defendant who testifies at trial may be cross-examined as to
all matters reasonably related to the issues she puts in dispute
during direct examination.  "A defendant has no right to avoid cross-
examination on matters which call into question his claim of
innocence."  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54
(9th Cir. 1981).  The government is not required to provide notice of
matters about which it may seek to cross-examine defense witnesses,
including defendant, should they testify.

**C.    Character and Impeachment Evidence**

The Supreme Court recognizes that character evidence—
particularly cumulative character evidence—has weak probative value
and great potential to confuse the issues and prejudice the jury.
See Michelson v. United States, 335 U.S. 469, 480, 486 (1948).  The
Court has thus given trial courts wide discretion to limit the
presentation of character evidence.  Id.

In addition, the form of the proffered evidence must be proper.
Rule 405(a) of the Federal Rules of Evidence sets forth the sole
methods for which character evidence may be introduced.  It
specifically states that, where evidence of a character trait is
admissible, proof may be made in two ways: (1) by testimony as to
reputation and (2) by testimony as to opinion.  Thus, a defendant may
not introduce specific instances of his good conduct through the
testimony of others.  See Michelson, 335 U.S. at 477.  On cross-
examination of a defendant's character witness, however, the

government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue.  <u>See</u> Fed. R. Evid. 405(a).  In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests.  <u>See</u> <u>Michelson</u>, 335 U.S. at 481.  The only prerequisite is that there must be a good faith basis that the incidents inquired about are relevant to the character trait at issue.  <u>See</u> <u>United States v. McCollom</u>, 664 F.2d 56, 58 (5th Cir. 1981).